Christ N. WEHNER and Helen Wehner, Plaintiffs and Appellants,

v.

Nick SCHROEDER, Ragina Linster, Katherine Kurtz, Louise Clark, John Tormaschy, Eva Tormaschy, Albert Tormaschy, and Genevieve Tormaschy, Defendants and Appellees.

Civ. No. 10329.

Supreme Court of North Dakota.

June 24, 1983.

Michael J. Maus [argued], of Howe, Hardy, Galloway & Maus, Dickinson, for plaintiffs and appellants.

Ward M. Kirby [argued], of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellees.

PAULSON, Justice.

This is an appeal from a judgment which dismissed the complaint of Christ N. Wehner and Helen Wehner requesting reformation of a deed based upon an alleged innocent mutual mistake and which quieted title to the minerals at issue in Albert Tormaschy and Genevieve Tormaschy. We reverse and remand.

This case involves fifty percent of all oil, gas, and minerals under 160 acres of land in Stark County, North Dakota. In 1950 Christ and Helen Wehner sold the 160 acres to Frank Schroeder and Barbara Schroeder. The contract for deed that the parties executed stated "That second parties [Schroeders] retain 50% of all oil gas and mineral on said land." The Wehners contend that the reference to "second parties" in the deed was a mistake and that the deed should have stated that they (the first parties) retained fifty percent of the minerals. Later in 1950 the Wehners executed a warranty deed conveying the 160 acres to the Schroeders. However, the warranty deed did not contain any mineral reservation. The Wehners allege that the reservation of minerals contained in the contract for deed was omitted from the warranty deed because of an innocent mutual mistake by the Wehners and the Schroeders. This warranty deed is the instrument the Wehners want reformed.

In 1950 the Wehners gave up possession of the land to the Schroeders. The Schroeders executed a mineral deed conveying an undivided one-half mineral interest to R.V. Hodge in 1951. The validity of this conveyance is not disputed. In 1951 both the Wehners and the Schroeders executed mineral leases which involved the land at issue. At this time the problem of the mineral ownership existed, although it was not recognized until later. It is undisputed that R.V. Hodge owned fifty percent of the minerals under the 160 acres, but in 1951 the issue existed regarding whether the Wehners or the Schroeders owned the other fifty percent mineral interest.

In 1963 the Schroeders sold the 160 acres to John Tormaschy and Eva Tormaschy, and executed a warranty deed which contained no mineral reservation. John testified at trial that he believed the Schroeders had sold one-half of the minerals and that the other half was sold to him along with the 160 acres. A few years later, John and Eva Tormaschy sold the 160 acres to their son and his wife, Albert Tormaschy and Genevieve Tormaschy. The purchase by Albert and Genevieve involved three re-

corded documents—(1) a contract for deed containing no mineral reservation dated 1966, (2) a mineral deed conveying a one-half mineral interest dated 1966, and (3) a warranty deed containing no mineral reservation dated 1974. Since they received the mineral deed, Albert and Genevieve have leased this mineral interest several times.

In 1978 the Wehners discovered the alleged mistake in the 1950 warranty deed, and in 1981 they began the present action. The Wehners' complaint requests that the court reform the warranty deed and quiet the title to the fifty percent mineral interest in their names. Albert and Genevieve Tormaschy counterclaimed seeking a judgment quieting title in their names. Before trial defendants Nick Schroeder, Ragina Linster, Katherine Kurtz, and Louise Clark stipulated that they did not claim any interest in the land and minerals involved and that they consented to any judgment enjoining them from ever asserting a claim in the property.

The trial judge found that John and Eva Tormaschy claimed no interest in the land or minerals. Therefore, the trial judge had only to determine whether Christ and Helen Wehner or Albert and Genevieve Tormaschy possessed legal title to the fifty percent mineral interest. The trial judge determined that the Wehners' claim was barred by statutes of limitation and by § 32–04–17 of the North Dakota Century Code which prohibits revision of a contract for fraud or mistake when the revision would prejudice rights acquired by third persons in good faith and for value. The trial judge then granted a judgment dismissing the Wehners' complaint and quieting title to the fifty percent mineral interest in Albert and Genevieve Tormaschy. The two issues raised by the Wehners on appeal are whether or not the 1950 warranty deed can be reformed under § 32–04–17, N.D.C.C., and whether or not the Wehners' claim is barred by any of the statutes of limitation.

Section 32–04–17, N.D.C.C., provides:

*"Revision of contract for fraud or mistake.*—When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention *so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.*" [Emphasis added.]

In *Sieger v. Standard Oil Company,* 155 Cal.App.2d 649, 318 P.2d 479, 484 (1957), a California court interpreted California Civil Code § 3399, which is almost identical to § 32–04–17, N.D.C.C., and stated:

"The conjunctive used in the last phrase ['in good faith and for value'] is expressive of the general common law on the subject. To become a bona fide purchaser one must have acquired title without notice, actual or constructive, of another's rights and also must have paid value for the same."

See *Ell v. Ell,* 295 N.W.2d 143, 153 (N.D. 1980); Annot., 79 A.L.R.2d 1180. The deed at issue in the instant case can be reformed only if the rights of third persons, acquired in good faith and for value, are not prejudiced. The trial court found that Albert and Genevieve Tormaschy are such third-party bona fide purchasers and that the reformation sought by the Wehners would prejudice their rights. We disagree with the trial judge's determination that the Tormaschys acquired the mineral interest "in good faith", *i.e.,* without actual or constructive notice of the Wehners' claim.

In *Sickler v. Pope,* 326 N.W.2d 86, 95 (N.D.1982), we stated that "[a] person dealing with real property is charged with notice of properly recorded instruments affecting title". In the instant case the contract for deed and the warranty deed were recorded in 1950. A search of the title abstract should have disclosed the discrepancy between the two instruments executed by the Wehners and the Schroeders. A title examination should have made the Tormaschys aware of the potential problem and caused them to investigate further.

In Finding of Fact No. 10, the trial judge stated that Albert and Genevieve Tormaschy had no notice "except as may have been communicated to them by the recording of the deed and contract between the Plaintiffs [Wehners] and Schroeders during the year 1950". In this finding the trial judge recognized the possibility of the existence of constructive notice. We believe Albert and Genevieve Tormaschy had constructive notice of a possible claim by the Wehners through recorded instruments and, as a result, they are not third-party bona fide purchasers. Therefore, § 32–04–17, N.D.C.C., does not prohibit the Wehners from attempting to obtain reformation of the warranty deed.

■ The trial judge also found, however, that the Wehners' quiet title claim was barred by a statute of limitations. The judge considered these statutes: §§ 28–01–04, 28–01–05, 28–01–15, 28–01–16, and 47–19.1–01, N.D.C.C., and concluded that § 28–01–04, N.D.C.C., applies to bar the Wehners' cause of action.

Section 28–01–04, N.D.C.C., provides:

"*Actions for recovery or possession of real property—Limitations.*—No action for the recovery of real property or for the possession thereof shall be maintained, unless the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action."

Unless the Wehners were "seized or possessed" of the property at issue within twenty years before they began the quiet title action, they are barred from maintaining an action to quiet title to the property. *See Production Credit, Etc. v. Terra Vallee,* 303 N.W.2d 79, 83 (N.D.1981); *Bernier v. Preckel,* 60 N.D. 549, 236 N.W. 243, 247 (N.D.1931). In an early Minnesota case involving a statute similar to § 28–01–04, N.D.C.C., the Minnesota Supreme Court stated:

"The term 'seized' in the statute is not used in contradistinction to 'possessed,' so as to admit of an interpretation that the legal title or ownership only would be sufficient to prevent the statute running

as against the true owner, though a stranger be in the actual occupancy, *pedis possessione,* of the land in dispute.

"The title of the owner of a freehold estate is described by the terms 'seizin,' or 'seizin in fee,' yet in a proper legal sense the holder of the legal title is not seized until he is fully invested with the possession, actual or constructive. *Seymour v. Carli,* 31 Minn. 81, 16 N.W. 495 (1883)."

In the determination in this case of whether or not the Wehners and the Tormaschys may maintain actions to quiet title to the mineral interest under § 28–01–04, N.D.C.C., possession is the crucial factor. Black's Law Dictionary (5th ed. 1979) defines "possession" at pages 1047–1048 and states, in part:

"The law, in general, recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it."

In the instant case, neither the Wehners nor the Tormaschys had actual or constructive possession of the fifty percent mineral interest. They did not engage in subsurface activity to acquire actual possession of the severed minerals. *See Burlington Northern, Inc. v. Hall,* 322 N.W.2d 233, 241 (N.D. 1982). They did not have constructive possession because they had constructive notice of the problems in the recorded documents involving the mineral interest and, therefore, did not have the authority to exercise dominion over the mineral interest. We believe the trial court incorrectly determined that the Tormaschys had possession of the mineral interest at issue within the twenty years before the commencement of this action. Neither the Wehners' nor the Tormaschys' claims are barred by § 28–01–04, N.D.C.C. Similarly, the statutes of limitation found at §§ 28–01–05 and 47–19.1–01, N.D.C.C., have no effect upon this action

as they also require possession of the real property by the claimant, and neither party to this action possessed the interest at issue for the requisite time.

█ The statutes of limitation found in §§ 28–01–15(2) and 28–01–16(1), N.D.C.C., do not require possession. They commence after the cause of action has accrued. We considered these statutes in *Ell v. Ell*, 295 N.W.2d 143, 151 (N.D.1980), and stated that:

"... a reformation action accrues, or comes into existence as a legally enforceable right, not at the time the instrument in question is executed, but at the time the facts which constitute the mistake and form the basis for reformation have been, or in the exercise of reasonable diligence should have been, discovered by the party applying for relief."

Therefore, whether or not §§ 28–01–15(2) and 28–01–16(1), N.D.C.C., bar the Wehners' action depends upon what time the facts which constituted the mistake forming the basis for reformation were discovered or in the exercise of reasonable diligence should have been discovered. The Tormaschys contend that when the Wehners executed the deeds in 1950 and delivered them to the Schroeders, they had the opportunity to and should have discovered that the documents did not include the correct mineral reservations. The Wehners contend that they had no reason to review the title after the sale to the Schroeders.

The trial judge determined that these statutes of limitation did not apply to bar the Wehners' action based upon our decision in *Ell v. Ell*. We do not believe that this finding was clearly erroneous. In *Ell v. Ell*, *supra*, 295 N.W.2d 143, we considered an erroneous omission of a mineral reservation in a deed which the parties executed in 1946, but which was not discovered until 1978. In the instant case the irregularity occurred in deeds executed by the Wehners in 1950, but it was not discovered until 1978. Therefore, according to our holding in *Ell*, *supra*, the action accrued in 1978 and is not barred by these statutes of limitation.

█ As we have determined that the Wehners are not barred from asserting

their claim by any statute of limitation or by § 32–04–17, N.D.C.C., the issue becomes whether or not the deed should be reformed on the basis of mutual mistake. The trial judge did not make any findings or conclusions regarding whether or not a mutual mistake was made upon which reformation should be based because he incorrectly determined that the Wehners' action was barred. The trial judge also did not make any findings or conclusions regarding the affirmative defenses of estoppel and laches raised by the Tormaschys. Therefore, we must reverse and remand for a determination of whether or not the doctrines of estoppel or laches bar the Wehners' action, and, if not, whether or not the 1950 deed should be reformed on the basis of mutual mistake. For the reasons stated, we reverse and remand for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE and SAND, JJ., concur.

PEDERSON, Justice, dissenting.

The judgment should be affirmed. If there are some missing, necessary or desirable findings of fact or conclusions of law, the remedy is found in Rule 35(b), NDRAppP, to wit: remand for that purpose.

The majority opinion, in reversing the judgment, will disturb the stability of both property law and contract law. A party to a contract who has affirmatively performed in a manner that is inconsistent with an insignificant provision (at that time before oil was discovered) of the contract and waits 28 years to recognize the difference and 31 years to ask that he be allowed to do it over, does not have the law on his side.

To imply that Tormaschy had constructive notice in 1963 that what Wehner did in 1950 was a mistake, but that Wehner did not have notice until 1978 or 1981, appears to me to be a distortion.