Christ N. WEHNER and Helen Wehner, Plaintiffs and Appellees,

v.

Nick SCHROEDER, Ragina Linster, Katherine Kurtz, Louise Clark, John Tormaschy, and Eva Tormaschy, Defendants,

and

Albert Tormaschy and Genevieve Tormaschy, Defendants and Appellants.

Civ. No. 10637.

Supreme Court of North Dakota.

July 27, 1984.

Howe, Hardy, Galloway & Maus, Dickinson, for plaintiffs and appellees; argued by Michael J. Maus, Dickinson.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendants and appellants; argued by Ward M. Kirby, Dickinson.

GIERKE, Justice.

Albert and Genevieve Tormaschy appeal from a district court judgment quieting title to 50 percent of all oil, gas, and minerals under 160 acres of Stark County property in Christ and Helen Wehner. We affirm.

In 1981, the Wehners brought an action to reform a warranty deed which they had executed in 1950. In that deed, the Wehners conveyed the land at issue to Frank and Barbara Schroeder. No mineral reservation appears in the deed. However, a contract for deed executed between the parties earlier in 1950 states "[t]hat second parties [Schroeders] retain 50% of all oil gas and mineral on said land." Both documents were recorded. In 1963, the Schroeders conveyed the property to John and Eva Tormaschy through a warranty deed which contained no mineral reservation. John and Eva Tormaschy ultimately conveyed the property to their son and his wife, the appellants Albert and Genevieve Tormaschy.

The Wehners claimed that the language in the original contract for deed reserving 50 percent of the mineral interests in the "second parties", was a mistake and that

the contract should have stated that they, the "first parties", retained 50 percent of the minerals. The Wehners further asserted that the alleged mineral reservation in the contract for deed was omitted from the warranty deed because of an innocent mutual mistake by the Wehners and the Schroeders. Following a bench trial, the court determined that the Wehners' claim was barred by statutes of limitation and by § 32–04–17, N.D.C.C., which prohibits revision of a contract for fraud or mistake when revision would prejudice the rights acquired by third persons in good faith and for value.

The Wehners appealed, and in *Wehner v. Schroeder,* 335 N.W.2d 563 (N.D.1983), a majority of this Court reversed the judgment, holding that: (1) Albert and Genevieve Tormaschy had constructive notice of a possible claim by the Wehners through recorded instruments, and therefore reformation under § 32–04–17, N.D.C.C., was not barred because the Tormaschys were not third-party bona fide purchasers; and (2) the Wehners' cause of action was not barred by any statute of limitation in this instance. This Court therefore remanded "for a determination of whether or not the doctrines of estoppel or laches bar the Wehners' action, and, if not, whether or not the 1950 deed should be reformed on the basis of mutual mistake." *Wehner, supra,* 335 N.W.2d at 567.

On remand, the trial court determined that the Wehners were not estopped from seeking reformation and that laches did not bar their cause of action. The trial court also determined that the Wehners had proven that a mutual mistake was made between themselves and the Schroeders "in that the deed did not contain a reservation of 50 percent of all oil, gas and minerals on the land as the parties had agreed." The trial court therefore ordered reformation,

quieted title in the Wehners, and dismissed the Tormaschys' counterclaim. The Tormaschys have appealed.

The issues properly before us for review [1] in this appeal are: (1) whether or not the trial court erred in determining that laches did not bar the Wehners' action; (2) whether or not the trial court erred in determining that the Wehners were not estopped from seeking reformation; and (3) whether or not the trial court erred in determining that the Wehners and Schroeders made a mutual mistake thus entitling the Wehners to reformation of the warranty deed.

## LACHES

The Tormaschys argue that the doctrine of laches should bar the Wehners' action which was brought 31 years after the deed was executed.

■ Laches does not arise from a delay or lapse of time alone, but is such a delay in enforcing one's right as to work a disadvantage to another. *Simons v. Tancre,* 321 N.W.2d 495, 500 (N.D.1982); *Frandson v. Casey,* 73 N.W.2d 436, 446 (N.D.1955). Laches is an equitable doctrine, and as such, cases involving laches must stand or fall on their own facts and circumstances. *Burlington Northern, Inc. v. Hall,* 322 N.W.2d 233, 242 (N.D. 1982); *Strom v. Giske,* 68 N.W.2d 838, 845 (N.D.1954). This Court has often stated that in addition to the time element, the party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state. *E.g., Burlington Northern, Inc., supra; Adams v. Little Missouri Minerals Association,* 143 N.W.2d 659, 667

1. The Tormaschys have raised several arguments relating to issues decided and statements made in the majority opinion authored by Justice Paulson in the previous appeal in this matter. The Tormaschys filed a petition for rehearing in that case addressing similar concerns and it was denied. No additional evidence was presented on remand. The trial court did not address these arguments raised by the Tormaschys, nor did the Wehners in their brief to this Court in the present appeal. This opinion will address only the undecided issues to which the remand was directed.

(N.D.1966). Furthermore, the general rule is that "laches do not commence to run against an action for the reformation of an instrument, until the fraud or mistake had been or ought to have been discovered." Annot., 106 A.L.R. 1338, 1345 (1937).

■ The trial court determined, on the basis of this Court's previous decision in *Wehner*, that the Wehners' action accrued in 1978 when they discovered that the warranty deed did not contain the mineral reservation. The trial court found that nothing occurred between 1978 and July 1981, when the suit was brought, to prejudice the Tormaschys in defending against the action. We have reviewed the record in this case and conclude that the trial court did not err in determining that the doctrine of laches did not bar the Wehners' action.

## ESTOPPEL

The Tormaschys contend that the Wehners should be estopped from asserting their title to the 50 percent mineral interests.

The rule for determining whether or not a party should be estopped from asserting their title to property was first set out by this Court in *Gjerstadengen v. Hartzell*, 9 N.D. 268, 275–276, 83 N.W. 230, 232 (1900):

"The rule as to the requisites of an estoppel in pais as applied to the title to realty which appeals to us as the most equitable to all parties is that announced by Field, J., in *Boggs v. Mining Co.*, 14 Cal. [279] on page 367. He said: 'It is undoubtedly true that a party may in many instances be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property it must appear: First, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to construc-

tive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge; and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved. * * * There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title; the effect of the estoppel being to forfeit his property, and transfer its enjoyment to another.'"

■ Thus, a party seeking to rely on estoppel must not only lack actual knowledge regarding the true state of title, but must also be destitute of the means of acquiring such knowledge. A public record is such a means. *Gilbertson v. Charlson*, 301 N.W.2d 144, 148 (N.D.1981).

■ In the prior appeal in this case, this Court determined that an examination of the title abstract would have disclosed the discrepancy between the two instruments executed by the Wehners and the Schroeders, and should have made the Tormaschys aware of the potential problem and caused them to investigate further. Thus, the Tormaschys were not destitute of the means of acquiring knowledge of the state of the title from the public record. The trial court did not err in determining that the Wehners were not estopped from asserting their title in this case.

## MUTUAL MISTAKE

The Tormaschys assert that the trial court erred in finding that a mutual mistake was made between the Wehners and the Schroeders regarding the omission of the mineral reservation in the deed.

Section 32–04–17, N.D.C.C., is the pertinent statutory provision which provides for the equitable remedy of reformation:

"*32–04–17. Revision of contract for fraud or mistake.*—When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the inten-

tion of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value."

A court of equity will grant relief by way of reformation of a written instrument, resulting from a mutual mistake, when justice and conscience so dictate. *Zabolotny v. Fedorenko*, 315 N.W.2d 668, 671 (N.D.1982); *Cokins v. Frandsen*, 141 N.W.2d 796, 799 (N.D.1966). The party seeking reformation has the burden of proving that the written instrument does not accurately state what the parties intended with evidence that is clear, satisfactory, specific, and convincing that there was a mutual mistake of fact. *Zabolotny, supra; Ives v. Hanson*, 66 N.W.2d 802, 806 (N.D.1954). Each case must be determined on its own particular facts and circumstances and the court can take into consideration all facts which disclose the intention of the parties. *Ell v. Ell*, 295 N.W.2d 143, 150 (N.D.1980). We will not reverse a trial court's finding that the evidence of mutual mistake was clear, convincing, persuasive, and compelling, unless it is clearly erroneous. *Zabolotny, supra.*

The record reflects that Nick Schroeder, the son of Frank and Barbara Schroeder, testified through a deposition received in evidence that he recalled his father telling him that the Wehners retained 50 percent of the mineral rights to the land at issue. He further testified that he participated in the negotiations for the sale of the land between his parents and John and Eva Tormaschy, and that he wrote a letter to John Tormaschy informing him that they were to receive only those minerals then owned by the Schroeders. Helen Wehner testified that after John and Eva Tormaschy purchased the property, Eva telephoned her and stated,

" 'How come you were so piggish and kept half of your mineral rights back when you sold your land.' " Helen Wehner also testified that after she discovered the mistake in the deed, she spoke with John Tormaschy who denied that his wife made the statement concerning the mineral reservation and said, " 'Furthermore, I already gave them to Albert so there's nothing you can do about it.' "

The evidence also reveals that the Wehners were involved in a similar transaction concerning a separate 80-acre tract of land which occurred at approximately the same time as the sale to the Schroeders. The same attorney handled both sales. The contract for deed involving the 80-acre parcel stated "[t]hat the parties of the first part [Wehners] retains [*sic*] 50% of all oil, gas, and mineral on said land." The word "first" appears immediately above the word "second", which was crossed out. This mineral reservation does not appear in the warranty deed. After discovering the mistake, the Wehners contacted the grantee, who voluntarily deeded back the minerals reserved in the contract for deed.

Under these particular circumstances, we cannot say that the trial court's finding of mutual mistake is clearly erroneous. Rule 52(a), N.D.R.Civ.P.

The Tormaschys also assert that before the Wehners are entitled to reformation, they must show that they were free from negligence in creating the problem for which the reformation is sought. The Wehners' failure to read the documents before signing them, the Tormaschys claim, should bar the Wehners from being granted reformation in this case.

Generally, the negligent failure of the complaining party to read an instrument before signing it does not, in itself, bar reformation.[2] 66 Am.Jur.2d *Reformation of Instruments* § 83 (1973); Restatement (Second) of Contracts § 157 comment

---

2. It has also been stated that:

"The rule that carelessness or negligence of a person in signing an instrument estops him from asserting that it does not truly express the agreement of the parties does not apply where relief is sought on the ground the instrument was obtained by fraud, or entered into by mutual mistake of the parties." *Lippire v. Eckel*, 178 Neb. 643, 649, 134 N.W.2d 802, 806 (1965).

b (1981). This rule has also been applied to reformation of real estate instruments. 66 Am.Jur.2d *Reformation of Instruments* §§ 84 and 85 (1973); Annot., 81 A.L.R.2d 7, §§ 12 and 13 (1962 & Later Case Service). It has also been stated that "[w]here the parties entrust to an attorney or scrivener the duty of preparing a deed or other document in accord with their agreement, and he, by his own mistake or fraud, embodies in it stipulations and conditions other than those agreed upon, the party against whom it is sought to be enforced may have it reformed, although he signed it without reading it." 66 Am.Jur.2d *Reformation of Instruments* § 85 (1973).

■ We believe that in order to bar reformation under these particular circumstances, the fault of the party requesting relief must amount "to a failure to act in good faith and in accordance with reasonable standards of fair dealing." Restatement (Second) of Contracts, § 157 (1981). The trial court applied this test and noted in its memorandum opinion that the Wehners' negligence in not reading the deed before they signed it did "not rise to a high degree because one is entitled to rely on the product of an attorney." The trial court found no evidence that the Wehners failed to act in good faith or in accordance with reasonable standards of fair dealing. We have reviewed the record in this case and cannot say that the trial court erred in this regard.

■ The Tormaschys also assert that the doctrine of merger should be applied to bar reformation in this instance. In *Zimmer v. Bellon,* 153 N.W.2d 757, 761 (N.D. 1967), this Court stated:

" 'As a general rule * * * a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed, all prior proposals and stipulations, and oral agreements, including promises made contemporaneously with the execution of the deed. * * * Accordingly, although the terms of preliminary agreements may vary from those contained in the deed, *the deed alone must be looked to for determination of the rights of the parties, in the absence of fraud or mistake, * * *.'* (Emphasis supplied.) 26 C.J.S.Deeds § 91c, page 842."

The trial court found that a mutual mistake had occurred, and, as we stated earlier, that finding is not clearly erroneous. The doctrine of merger therefore does not bar reformation in this case.

■ Finally, the Tormaschys appear to argue that reformation based on mutual mistake should be allowed only in actions between the original contracting parties. However, the general rule is that reformation of a written instrument will be allowed as against the original parties to the instrument and all those who claim under said parties in privity, with the exception of bona fide purchasers or encumbrancers for value and without notice. *Ell, supra,* 295 N.W.2d at 153. In the previous appeal in this action, this Court determined that the Tormaschys were not third-party bona fide purchasers. *Wehner, supra,* 335 N.W.2d at 566.

For the reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE and SAND, JJ., concur.

PEDERSON, Justice, dissenting.

I realize that this is not a rehearing to reconsider the majority decision in *Wehner v. Schroeder,* 335 N.W.2d 563 (N.D.1983). Nevertheless, the result could have provided justice but it does not. My views have not changed—life is going to be less stable as a result of action by this court.