2012 ND 55

Richard A. ARNDT, Karen K. Arndt, TTT Minerals, LLC, Douglas Kinnoin, James S. Enge, Gerald D. Neset, Gary Craft, Marshall Craft, Jane Craft, Brian E. Olson, Peggy Olson, George L. Baranek, Katherine A. Baranek, and William (W.R.) Everett, Plaintiffs, Appellees and Cross–Appellants,

v.

Angeline MAKI, Marily Bryant, Lillian (Gunderson) Jastrzebski, Caroline Sadle, Esther Maki, Doris Walter, Gloria Worley, Laura Erber, Lloyd Arndt, Jason Arndt, Defendants, Appellants and Cross–Appellees.

No. 20110191.

Supreme Court of North Dakota.

March 15, 2012.

Collin Paul Dobrovolny (argued) and Jon William Backes (appeared), Minot, N.D., for plaintiffs, appellees and cross-appellants Karen Arndt, Richard Arndt, Jane Craft, and Marshall Craft.

Jordan Joseph Evert (argued) and Peter Haroldson Furuseth (on brief), Williston, N.D., for plaintiffs and appellees George Baranek, Katherine Baranek, Gary Craft, James Enge, Douglas Kinnoin, Gerald Neset, Brian Olson, Peggy Olson, and TTT Minerals.

Greg W. Hennessy, Williston, N.D., for defendants, appellants and cross-appellees.

SANDSTROM, Justice.

[¶ 1] Angeline Maki and other relatives of Richard Arndt (collectively "Maki defendants") appeal from a judgment declaring that Arndt and others (collectively "Arndt plaintiffs") are the owners of mineral interests underlying the Arndt family farm, and the Arndt plaintiffs cross-appeal from the part of the judgment denying their claim against the Maki defendants for attorney fees and costs for slandering title to the minerals. We conclude the district court properly granted summary judgment dismissing the Maki defendants' counterclaim for reformation of a 1973 contract for deed and a 1984 personal representative's deed

and correctly quieted title to the minerals in the Arndt plaintiffs. We further conclude, however, genuine issues of material fact exist on the claim for attorney fees and costs for slandering title to the minerals. We affirm in part, reverse in part, and remand to the district court for further proceedings.

I

[¶ 2] This case involves a family dispute over the mineral rights underlying what the parties refer to as the Arndt family farm in Mountrail County. The Maki defendants are Richard Arndt's eight siblings and the two sons and heirs of his deceased brother. The Arndt plaintiffs are Richard Arndt, his wife, and individuals and a company to whom the Arndts granted mineral interests received by them under a 1984 personal representative's deed. The Maki defendants claim an interest in the disputed mineral acres under a 2007 personal representative's deed. The family farm was owned by Carl and Marie Arndt, who were the parents of Richard Arndt and his siblings. .

[¶ 3] While Richard Arndt was serving in the United States Navy in 1967, he received a letter from his parents asking him to return home to take over the family farm. While home on leave, Richard Arndt agreed to do so if he were allowed to buy the farm. After his discharge from the Navy in 1968, Richard Arndt returned home and farmed with his father until May 1, 1973, when Carl Arndt died. Carl Arndt died intestate and the farm was titled in his name alone. Shortly after Carl Arndt's death, Marie Arndt and the ten children met with an attorney, now deceased, to discuss financial affairs related to Carl Arndt's death. The attorney informed them that because Carl Arndt died without a will, Marie Arndt was entitled to one-half of the estate and the other one-half of the estate would be divided equally between the ten children. Marie Arndt was named personal representative of Carl Arndt's estate, and the ten children agreed to renounce their interests in the farm through waivers of inheritance. The children understood that Marie Arndt was the sole owner of the farm and that she was free to dispose of the farm as she wished, and she informed the children that she intended to sell the farm to Richard Arndt.

[¶ 4] On May 23, 1973, Marie Arndt and Richard Arndt entered into a handwritten agreement, penned by Marie Arndt, memorializing the terms for the sale of the farm. The handwritten agreement stated, "The mineral rights that are on the place go with the place." The attorney prepared a consistent contract for deed, Marie and Richard Arndt signed it on October 24, 1973, and the contract for deed was duly recorded in Mountrail County. The contract for deed conveying the farm to Richard Arndt contained no mineral reservation.

[¶ 5] Marie Arndt died intestate on November 12, 1975. Richard Arndt's sisters, Angeline Maki and Marily Bryant, were appointed co-personal representatives of Marie Arndt's estate and were also substituted as co-personal representatives of Carl Arndt's estate. Richard Arndt eventually paid off the contract for deed in 1984, and all proceeds were paid to Marie Arndt's heirs. On October 3, 1984, the final decree of distribution in the estate of Carl Arndt was entered in which the farm was distributed, without reservation, to Marie Arndt's estate. On October 4, 1984, a personal representative's deed signed by Angeline Maki and Marily Bryant as co-personal representatives of Marie Arndt's estate was duly recorded conveying the farm to Richard Arndt. This personal representative's deed also did not contain a mineral reservation.

[¶ 6] On March 29, 2007, Angeline Maki and Marily Bryant, in their capacities as co-personal representatives of the estates of Carl Arndt and Marie Arndt, prepared and recorded a second personal representative's deed, this time conveying the minerals underlying the Arndt family farm to all of the heirs of Carl and Marie Arndt then living. In September 2007, all of the Maki defendants recorded separate statements of claim asserting an interest in the minerals.

[¶ 7] In November 2008, the Arndt plaintiffs brought this quiet title action against the Maki defendants and sought attorney fees and costs under N.D.C.C. § 47–19.1–09 for slandering title to the minerals. The Maki defendants counterclaimed for "reformation of the mineral deed to Richard and of the Contract for Deed from which it arose." They contended reformation was required for fraud or mistake because Marie Arndt had informed the children at the attorney's office following Carl Arndt's death that the minerals underlying the family farm would be divided equally among all ten children. The Arndt plaintiffs unsuccessfully moved for summary judgment on two occasions. The district court granted their third motion for summary judgment and dismissed the counterclaim for reformation. The court concluded the Maki defendants had presented insufficient evidence to support their reformation action and quieted title to the minerals in the Arndt plaintiffs. The court dismissed the Arndt's claim for attorney fees and costs for slandering title to the minerals, stating it was "*not* persuaded that the Maki Defendants recorded the March 29, 2007, Personal Representative's Deed of Distribution for the purpose of slandering the title to the minerals underlying the Arndt Family Farm."

[¶ 8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The Maki defendants' appeal and the Arndt plaintiffs' cross-appeals were timely under N.D.R.App.P. 4(a) and N.D. Sup.Ct. Admin. Order 20. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 9] The Maki defendants argue the district court erred in granting summary judgment dismissing their claim for reformation.

[¶ 10] Our standard of review for summary judgments is well-established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Saltsman v. Sharp*, 2011 ND 172, ¶ 4, 803 N.W.2d 553 (quoting *Brown v. Montana–*

*Dakota Utilities Co.,* 2011 ND 38, ¶ 3, 794 N.W.2d 741). Although the party seeking summary judgment has the burden to clearly demonstrate there is no genuine issue of material fact, the court must also consider the substantive evidentiary standard of proof when ruling on a motion for summary judgment. *Heart River Partners v. Goetzfried,* 2005 ND 149, ¶ 9, 703 N.W.2d 330. " 'In considering the substantive standard of proof, the court must consider whether the trier of fact "could reasonably find either that the plaintiff proved his case by the quality and quantity of evidence required by the governing law or that he did not." ' " *Citizens State Bank–Midwest v. Symington,* 2010 ND 56, ¶ 18, 780 N.W.2d 676 (quoting *Goetzfried,* at ¶ 9).

[¶ 11] The statutory basis for reformation is found in N.D.C.C. § 32–04–17, which provides:

> When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

[¶ 12] "The party seeking reformation of a written instrument must establish by clear and convincing evidence that the document does not state the parties' intended agreement." *Johnson v. Hovland,* 2011 ND 64, ¶ 12, 795 N.W.2d 294. "When considering whether to reform a written instrument, 'courts should exercise great caution and require a high degree of proof, *especially when death has sealed the lips of the original parties or a party.*' " *Spitzer v. Bartelson,* 2009 ND 179, ¶ 24, 773 N.W.2d 798 (quoting *Ives v. Hanson,* 66 N.W.2d 802, 805 (N.D.1954)).

Courts will grant reformation " 'only upon the certainty of error.' " *Spitzer,* at ¶ 24 (quoting *Ell v. Ell,* 295 N.W.2d 143, 150 (N.D.1980)). Parol evidence is admissible in an action to reform a written instrument on the grounds of fraud or mutual mistake of the parties. *Johnson,* at ¶ 12. A "mutual mistake that will justify reformation requires that, at the time of the execution of the agreement, both parties intended to say something different from what was said in the document." *Goetzfried,* 2005 ND 149, ¶ 15, 703 N.W.2d 330. Although whether there has been a mistake sufficient to support a reformation claim is ordinarily a question of fact, *id.,* issues of fact become issues of law if reasonable persons could reach only one conclusion from the facts. *Saltsman,* 2011 ND 172, ¶ 5, 803 N.W.2d 553.

**A**

[¶ 13] The Maki defendants argue the district court erred in granting summary judgment dismissing their counterclaim, because they are entitled to reformation of the 1973 waivers of inheritance on the basis of fraud or mistake. Under the circumstances, we conclude the Maki defendants cannot raise this issue on appeal.

[¶ 14] First, the district court did not address whether the Maki defendants were entitled to reformation of the waivers of inheritance. The court's failure to do so is understandable because the Maki defendants' counterclaim sought only reformation of the 1973 contract for deed and the 1984 personal representative's deed. The only mention of rescinding the waivers of inheritance appears in one sentence in the Maki defendants' 13–page brief in opposition to the motion for summary judgment in which they contended "[t]he correct resolution instead is that the Waivers of Inheritance are rescinded for

fraud in the inception." A fleeting reference in a brief to an unpled claim is insufficient to properly raise an issue for consideration. *See State v. Boespflug,* 2011 ND 30, ¶ 16, 793 N.W.2d 774. Although the Maki defendants devote most of their appellate brief to this argument, the purpose of an appeal is to review the actions of the district court, not to grant an appellant an opportunity to develop and expound upon new strategies or theories. *Spratt v. MDU Resources Group, Inc.,* 2011 ND 94, ¶ 14, 797 N.W.2d 328.

[¶ 15] Second, the waivers of inheritance are not in the record. The Maki defendants conceded during oral argument they did not specifically request that the district court take judicial notice of the documents, but instead request that we take judicial notice under N.D.R.Ev. 201 of the waivers of inheritance "filed in Mountrail Co. Probate No. 3139, Carl Arndt." Although a court has discretion to take judicial notice under N.D.R.Ev. 201, "neither this court nor the [district] court is obligated to do so." *State v. Jordheim,* 508 N.W.2d 878, 883 n. 1 (N.D. 1993); *see also Opp v. Matzke,* 1997 ND 32, ¶ 9, 559 N.W.2d 837. We deny the Maki defendants' request because these documents were not part of the record before the district court. *See Center for Bio–Ethical Reform, Inc. v. City and Cnty. of Honolulu,* 455 F.3d 910, 918 n. 3 (9th Cir.2006). "Evidence which does not appear in the record of the [district] court proceedings cannot be considered by this Court on appeal." *Evenstad v. Buchholz,* 1997 ND 141, ¶ 12, 567 N.W.2d 194; *see also State v. Purdy,* 491 N.W.2d 402, 407 (N.D.1992); *Union State Bank v. Woell,* 434 N.W.2d 712, 715 n. 1 (N.D.1989).

[¶ 16] Because the issue about reforming the waivers of inheritance was inadequately raised in, and was not decided by, the district court, we decline to address it.

## B

[¶ 17] The Maki defendants argue the district court erred in granting summary judgment dismissing their claim for reformation of the 1984 personal representative's deed based on fraud or mistake.

[¶ 18] In support of their third motion for summary judgment, the Arndt plaintiffs presented the affidavit of Richard Arndt. Richard Arndt said that during discussions with his mother about the purchase of the farm, which took place out of the presence of his siblings, it was Marie Arndt's intention "to sell the entire farm, surface and the minerals to me." Richard Arndt further stated he was not with his mother when she discussed the contract for deed with the attorney, he did not confer with the attorney about the contract for deed, and "[i]t was not my mother's intention at that time to reserve the minerals to anyone."

[¶ 19] The district court detailed its reasons for granting summary judgment dismissing the reformation claim:

> The essence of the Maki Defendants' claim is that they never should have been *strangers to the title* to the subject minerals at any time subsequent to the execution of the Contract for Deed between their mother, Marie, and their brother/uncle, Richard—because Marie had made it very well known to all of her children (including Richard) that the subject minerals were to be divided equally among all of Marie's children (including Richard).
>
> . . . .
>
> In reviewing the Contract for Deed (10–24–73) and the Deed of Personal Representative (01–13–84) given in fulfillment of the contract, the Court has already determined, in earlier summary judgment rulings made by the Court in

this case, that the same appear to be wholly *unambiguous* and *consistent,* in the sense that: (a) the parties are clearly identified; (b) the description of the property being conveyed is clearly set forth; (c) the terms of both documents are readily understandable; (d) both documents appear to have been executed with the requisite formalities; and, (e) there is *no mineral reservation* in either of these documents. However, as earlier noted by the Court, the Maki Defendants are asking the Court to look beyond the "four corners" of these documents, contending that the same do not reflect the true intentions of the parties due to alleged *fraud* on the part of Richard, a *mistake* on the part of the drafters of these documents, or, a *combination of fraud and mistake.* The Maki Defendants assert that whether the parties' true intentions were thwarted by an act of fraud on the part of Richard, or by some sort of mistake on the part of the drafters of these instruments, or by a combination of fraud and mistake, are genuine issues of material fact which cannot be resolved on summary judgment.

. . . .

We now have sworn testimony (in affidavit form) from the only person (i.e., Richard) who is *still alive,* and who has *personal knowledge* as to what transpired: (a) during the discussions leading up to the execution of the May 23, 1973, handwritten agreement between Marie and Richard; (b) at the time of the execution of this handwritten agreement; and, (c) at the time of the execution of the October 24, 1973, Contract for Deed.

The Maki Defendants, on the other hand, have offered *no evidence* that, on the separate occasions the May 24, 1973, handwritten agreement and the October 24, 1973, Contract for Deed were execut-

ed, the parties to those two instruments (i.e., Marie and Richard) *intended to say something different from what was actually said in those instruments.* For purposes of this reformation action, the focus has to be on the· *dates these instruments were executed,* and not on what Marie may have said (about ownership of the minerals) previously or subsequently thereto.

. . . .

*Query*: If the Maki Defendants knew, as far back as early May of 1973, that it was their mother's intention that the minerals underlying the Arndt Family Farm were to be owned in equal shares by the ten Arndt children, *and* they (i.e., the Maki Defendants) later learned that the October 24, 1973, Contract for Deed between Marie and Richard contained no mineral reservation necessary to carry out Marie's intention, why would Angeline and Marily knowingly execute a Deed of Personal Representative (to Richard) which likewise contained no mineral reservation?

In executing this Deed of Personal Representative, it is presumed that Angeline and Marily acted voluntarily, and with knowledge as to what they had signed, what it (i.e., the deed) contained and what their signatures bound them to. *See*: *Federal Surety Co. v. Midwest Const. Co.,* [58 N.D. 937, 228 N.W. 432 (1929)]. It is also significant to note that Angeline and Marily utilized the services of an attorney . . . who had to have been aware of the [ ]well established rule that a conveyance without exception or reservation conveys not only the surface but also the minerals.[ ] *See*: *Kadrmas v. Sauvageau,* 188 N.W.2d 753 (N.D.1971); *Miller v. Kloec[k]ner,* 1999 ND 190, 600 N.W.2d 881 . . . .

When all is said and done, the Court finds, as a matter of law, that the proof offered by the Maki Defendants in support of their reformation claim falls far short of the *clear, satisfactory, specific and convincing evidence* they need in order to show that the parties (i.e., *both* parties) to the documents in question (i.e., the October 24, 1973, Contract for Deed and the January 13, 1984, Deed of Personal Representative) intended—on the separate occasions those documents were executed—to say something different from what was actually said in those documents.

[¶ 20] The Maki defendants rely on *Wehner v. Schroeder,* 354 N.W.2d 674 (N.D.1984), and *Wehner v. Schroeder,* 335 N.W.2d 563 (N.D.1983), in which this Court allowed reformation of a warranty deed based on mutual mistake. The Maki defendants' reliance on the *Wehner* cases is misplaced, however, because the contract for deed in those cases contained a mineral reservation, but the subsequent warranty deed contained no mineral reservation. *See Wehner,* 354 N.W.2d at 675–76; *Wehner,* 335 N.W.2d at 564. As the district court stressed in this case, there is no inconsistency between the contract for deed and the personal representative's deed that raises an ambiguity about the intention of the parties.

[¶ 21] Rather, this case is similar to *Goetzfried,* 2005 ND 149, ¶ 17, 703 N.W.2d 330, in which this Court affirmed summary judgment dismissing a reformation claim because the warranty deed unambiguously conformed to one of the parties' version of the facts. In that case, the parties disagreed whether the Goetzfrieds would pay special assessments for improvements on property. *Id.* We explained:

> [T]he conflicting factual versions of the parties' negotiations indicate there may be a dispute about the terms of the

parties' oral agreement, but that dispute is not a material fact for purposes of the reformation claim because there was no common intention entertained by both parties. The warranty deed unambiguously stated the property was "free from all encumbrances, except installments of special assessments or assessments for special improvements which had not been certified to the County Auditor for collection." The written deed conformed to the Goetzfrieds' version of the facts and does not support a claim that both parties intended to say something different from what was said in the deed.

*Id.* Likewise, in this case the 1973 contract for deed and the 1984 personal representative's deed conform with Richard Arndt's version of the facts.

[¶ 22] We agree with the district court's analysis in this case. Consequently, we conclude the court did not err in granting summary judgment dismissing the Maki defendants' counterclaim for reformation and in quieting title to the minerals in the Arndt plaintiffs.

### III

[¶ 23] In their cross-appeal, Richard Arndt, Karen Arndt, Marshall Craft and Jane Craft argue the district court erred in summarily dismissing their claim for attorney fees and costs for slandering title to the minerals. Although TTT Minerals, LLC, Douglas Kinnoin, James Enge, Gerald Neset, Gary Craft, Brian Olson, Peggy Olson, George Baranek and Katherine Baranek also filed a cross-appeal, they did not raise any cross-appeal issues in their brief, and we therefore deem their cross-appeal to have been abandoned. *See Estate of Ambers,* 477 N.W.2d 218, 219 n. 2 (N.D.1991).

[¶ 24] Section 47–19.1–09, N.D.C.C., allows for an award in a quiet title action of

damages against persons slandering title to real estate:

No person shall use the privilege of filing notices under this chapter or recording any instrument affecting title to real property for the purpose of slandering the title to real estate or to harass the owner of the real estate and in any action brought for the purpose of quieting title to real estate, if the court shall find that any person has filed a claim for the purpose of slandering title to such real estate or to harass the owner of the real estate, the court shall award the plaintiff all the costs of such action, including attorney fees to be fixed and allowed to the plaintiff by the court, and all damages that plaintiff may have sustained as the result of such notice of claim having been filed for record or the instrument having been recorded.

The district court ruled it was *"not* persuaded that the Maki Defendants recorded the March 29, 2007, Personal Representative's Deed of Distribution for the purpose of slandering the title to the minerals underlying the Arndt Family Farm." The Arndt plaintiffs who have maintained their cross-appeal argue they presented sufficient evidence to raise a genuine issue of material fact to warrant an evidentiary hearing on their claim for attorney fees and costs under the statute.

[¶ 25] This Court has not determined whether the same summary judgment principles applicable to actions for slander of title also apply to a request for attorney fees and costs under N.D.C.C. § 47–19.1–09. *See, e.g., Maragos v. Union Oil Co.,* 1998 ND 180, ¶ 3, 584 N.W.2d 850 (trial to the court in action for slander of title). Nebraska courts, applying Neb. Rev.Stat. § 76–296 (Reissue 2009), a statute substantially similar to N.D.C.C. § 47–19.1–09, provide some guidance. In *Lindquist v. Ball,* 232 Neb. 546, 441 N.W.2d 590, 592 (1989), the Nebraska Supreme Court addressed whether summary judgment was appropriately granted dismissing a counterclaim for slander of title under Neb.Rev.Stat. § 76–296. The court concluded there was no "factual issue regarding slander of title" because "[t]here is no evidence that the plaintiff filed the quiet title action for the purpose of slandering the title to the real estate." *Lindquist,* 441 N.W.2d at 592. Subsequent decisions of Nebraska courts demonstrate that summary judgment principles apply to claims made under the statute. *See Wilson v. Fieldgrove,* 280 Neb. 548, 787 N.W.2d 707, 711, 715 (2010) (summary judgment dismissal affirmed); *Woodle v. Curlis,* 2012 WL 399854, at *7–8 (Neb.Ct. App. Feb. 7, 2012) (affirming dismissal of claim that went to trial). The Maki defendants have provided no argument why we should apply N.D.C.C. § 47–19.1–09 any differently.

[¶ 26] Here, Angeline Maki and Marily Bryant in their capacities as co-personal representatives prepared and recorded a personal representative's deed conveying the minerals to all of the living heirs of Carl and Marie Arndt 23 years after they conveyed the same minerals to Richard Arndt. The Maki defendants also recorded statements of claim after this lengthy delay. The timing of the 2007 personal representative's deed is questionable because, as the Maki defendants acknowledge in their appellate brief, the "minerals at issue have produced only within the last five years."

[¶ 27] Viewed in the light most favorable to the Arndt plaintiffs who have maintained their cross-appeal, the evidence permits an inference that the Maki defendants intentionally filed notices and recorded instruments for the purpose of slandering title to the real estate or to harass the owners of the real estate. We conclude

the district court erred in granting summary judgment dismissing the claim for slandering title to the real estate.

## IV

[¶ 28] We have considered the other arguments raised and consider them to be without merit or unnecessary to our decision. We affirm the judgment dismissing the Maki defendants' counterclaim for reformation. We reverse that part of the judgment dismissing the claim made by the Arndt plaintiffs who have maintained their cross-appeal for attorney fees and costs for slandering title, and we remand for further proceedings.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.