RIVER VIEW ASSOCIATES, Respondent, *v.* SHERATON CORPORATION OF AMERICA, Appellant.

First Department, December 11, 1969.

*Macdonald Flinn* of counsel (*Laura Banfield* with him on the brief; *White & Case,* attorneys), for appellant.

*Irving Parker* of counsel (*Martin S. Wagner* with him on the brief; *Jacobs Persinger & Parker,* attorneys), for respondent.

STEUER, J. The action is by a landlord against the guarantor of a lease. The tenant is a wholly owned subsidiary of the defendant and no question as to the guarantee, per se, is presented. The questions presented are solely as to whether or not there is liability on the part of the tenant, and for convenience discussion will be as if the defendant sued were the tenant.

The premises in question are the Sheraton Motor Inn in this city. The lease is for 21 years, and the first year's rental is in dispute. The lease calls for a fixed net rent of $670,000, which is not in controversy, and in addition a sum equal to $27\frac{1}{2}\%$ of the net profit during the lease year in excess of $1,030,000. In short, the plaintiff claims that the tenant made a net profit in excess of that sum and defendant maintains that it did not. No question is presented as to the amount of actual receipts or disbursements, the differences between the parties arising from the provisions of the lease as to how net profits are to be arrived at.

Defendant concedes that according to the provisions of the lease its net profit was $744,617. To which figure the plaintiff claims several items are to be added. These items can be grouped into four classifications. The first consists of interest on a leasehold mortgage and a loan from the parent company. The loans in question were a part of the purchase price of the leasehold, in no sense an operating expense as contemplated by the lease. The court disallowed these charges, amounting to $124,035, and we believe properly did so. The second item is made up of the balance of a number of expenses claimed by plaintiff to be promotion expenses, and as such limited in the lease. We agree with the factual finding of Trial Term that these items were improperly deducted in defendant's calculation of net profit. The testimony offered that these items were properly deducted as a matter of good accounting practice is of no avail. Undoubtedly that would be true if by the tenant's practices it was seeking to determine whether it was operating at a profit. But that is not the issue here. Under the lease the amount it can charge for promotional expense is circumscribed, and these were promotional expenses. The amount of the items improperly deducted under this heading was $57,045.

If these two items be added to the conceded profit, the latter figure would become $925,697.

The next item in dispute consists of the cost to the tenant of the utility services (fuel, gas, electricity, telephone) and insurance. While plaintiff concedes that these items were necessary expenditures and would normally be deducted from any calculation of profit, it claims that the provisions of this lease except them. The gist of the argument is the lease definition of net profit (§ 13.02) as the operating profit " but (a) before deducting (i) the fixed net rent and additional rent reserved in this lease for that lease year, (ii) Tenant's income or franchise taxes paid in that lease year ". Plaintiff then refers to article I (§ 1.01, subd. [A], par. [iv]) which in specifying the net rent reads: " All other sums and charges required to be paid by Tenant under the terms of this lease, which shall constitute, and are sometimes hereinafter referred to as ' additional rent.' " Plaintiff then refers to section 4.01 of article IV as to the utility charges, and to section 9.01 of article IX as to the insurance charges, to claim that these items are " additional rent." However, neither of these sections so provides. The tenor of the lease is that the tenant shall pay such charges and indemnify and save the landlord harmless in regard to them. There is no provision that the payments so provided are to be made to the landlord but only to the utility companies, and the provision is

obviously for the purpose of protecting the landlord in case the utility makes any claim against it. These charges are not rent or additional rent, and it was error for Trial Term to so treat them.

The final items for consideration are taxes and license fees consisting of real estate, water, and gross receipts taxes, and licenses. All of these are described in the lease as additional rent in these words (art. II, § 2.01): " Except as provided in Section 2.05, Tenant shall pay, as additional rent hereunder,'' and there follows an exhaustive list of all possible taxes or assessments that might be levied against the property. We believe that the words in sections 13.01 and 13.02 of article XIII which provide that additional rent is not deductible as an expense refer to what is sometimes called " Overage Rent '', namely, that which would become payable if a net profit of $1,030,000 were realized. This conclusion is reached from two well-established legal principles. The first is that parties to an agreement are presumed to act sensibly in regard to it and an interpretation that produces an absurdly harsh result is to be avoided (*Wigand* v. *Bachmann-Bechtel Brewing Co.*, 222 N. Y. 272; *Fleischman* v. *Furgueson*, 223 N. Y. 235). Here it would be contrary to all experience to conclude that the parties agreed that the higher the taxes on the property would be the more the tenant would be obligated to pay the landlord in addition to what it was obligated to pay to the taxing authority. In related situations it was held that such an interpretation was impermissible (*Hempstead Theatre* v. *Metropolitan Playhouses*, 6 N Y 2d 311; *Wendel Foundation* v. *Moredall Realty Corp.*, 282 N. Y. 239).

However, it is equally well established that words in a contract are not to be ignored when seeking to arrive at the expressed intent. The description of taxes as additional rent should not be treated as if these words did not appear. It is quite clear as to what their purpose was and what the effect should be. Without such a stipulation it would not be possible for the landlord to evict a tenant who, though obligated by the lease to do so, failed to pay the taxes, as it is only the failure to pay rent which gives rise to summary proceedings to dispossess (Real Property Actions and Proceedings Law, § 711; *Matter of Petrakakis* v. *Crown Hotels*, 3 A D 2d 635). Whereas if it is stipulated that the taxes are additional rent, such action will lie (cf. *Barrow Realty Corp.* v. *Village Brewery Rest.*, 272 App. Div, 262). This distinction, well known to real estate

draftsmen, is the situation intended to be covered by the description of the taxes as additional rent.

That the foregoing is the true expressed intent of the parties is further buttressed by the provisions of section 13.03, which defines the term "net profits" in the event the tenant sublets the entire premises. In that event, if the subtenant is obligated to pay taxes and other costs provided for in the main lease, net profits in the main lease is defined to mean the net rental income received by the tenant from the subtenant. So it appears that if there is a subletting the landlord would have no claim to be compensated on the basis that the taxes and other charges made were additional rent. It would compound absurdity to interpret this lease to give the landlord an additional return if the tenant remained in possession but not if he exercised a privilege to sublet.

It follows that the net profit realized by the tenant as that term is used in the lease was $925,697, and as this sum is less than the minimum of $1,030,000 which would give rise to a claim for overage or additional rent, plaintiff failed to establish any right to recover.

The judgment entered herein February 27, 1969, should be vacated on the facts and the law and judgment directed for the defendant with costs.

CAPOZZOLI, J. P. (dissenting in part). Under section 2.01 of article II of the lease, we find that the "Tenant shall pay, as additional rent hereunder * * * all real estate taxes, assessments, vault charges, sewer rent, and water charges, franchise charges imposed by the City of New York by reason of the use of any facilities affecting the streets or highways owned by the City of New York, and all other taxes and charges". This is clear and unambiguous language and admits of no doubt as to its meaning. The parties have expressly agreed that these payments shall constitute additional rent.

No one contends that the amount which is paid for these aforementioned taxes is to be matched by a similar amount to be paid to the landlord and I am at a loss to understand the language of the majority opinion which indicates that "the tenant would be obligated to pay the landlord in addition to what is was obligated to pay to the taxing authority". All that the language in article II means, it seems to me, is that the tenant assumes payment of all taxes and that such payment shall be considered rent in addition to the rent specified in section 1.01 of article I, of $670,000 per annum. Why did they not arrive at a specific

figure which would represent taxes and add that figure to the original rent in the first place? It is simple to understand why they did not do so. There is no assurance that the taxes would be constant year after year. Obviously, in view of the nature of the business being conducted by the tenant, the landlord could not be certain as to what the taxes might be in the future and it was with that thought in mind that the agreement was made whereby the tenant assumed the obligation of paying all taxes irrespective of amount and the sum so paid would be considered additional rent. This inference is not weakened by the fact that the use of the words " additional rent " would also permit the landlord to evict the tenant, in the event the latter failed to meet its obligation to pay the taxes, where without them it would not be permitted to do so.

Let us contrast the language of the lease, quoted above, with that which appears in section 4.01 of article IV entitled Public Utility Charges. There we find the following: " Tenant agrees to pay or cause to be paid all charges for gas, water, sewer, electricity, light, heat, power, telephone or other communication service, or other utility or service used, rendered or supplied to, upon or in connection with the leased premises throughout the demised term, and to indemnify Landlord and save it harmless from and against any cost, expense, including reasonable attorneys' fees, loss and liability or damage on such account.''

It should be noted that nowhere in the language of the lease covering these items is the term " additional rent " used, as was in the case of the taxes. The parties must have intended to draw a distinction between the manner in which the taxes were to be treated and the manner in which the utility services were treated.

The defendant's summary of the lease prepared by it shortly after obtaining the lease and before any litigation, which appears in the record as plaintiff's Exhibit 7, at page A-70, discloses the following language: " ADDITIONAL RENT: Tenant shall pay all costs and obligations related to the premises including real estate taxes ''.

Again, under OVERAGE RENT, we find the following: " Net Profit for any year shall be the profit derived from operations ——

" Before —— (a) deducting fixed rent and additional rent ''.

The aforesaid quotes from the summary prepared by the defendant clearly denote that the defendant itself regarded the payment of taxes as additional rent and that this additional rent could not be deducted in arriving at net profits.

For the above reasons I dissent in part and would modify the judgment so as to exclude only the following items:

| | |
|---|---:|
| Fuel | $ 28,344.83 |
| Gas | 5,381.31 |
| Electricity | 64,699.07 |
| Telephone | 115,362.42 |
| Total | $213,787.63 |

because they are not additional rent and the amount of the judgment be reduced *pro tanto*.

MARKEWICH and McNALLY, JJ., concur with STEUER, J.; CAPOZZOLI, J. P., dissents in part in opinion, in which McGIVERN, J., concurs.

Judgment reversed on the facts and the law, the judgment vacated, and judgment directed for the defendant, with $50 costs and disbursements, and the Clerk is directed to enter judgment in favor of defendant dismissing the complaint with costs.