CHELM MANAGEMENT COMPANY; Valley Park C & D Co. Ltd.; and Valley Park Development I, L.P., Defendants–Appellants,

v.

WIELAND–DAVCO CORPORATION, Plaintiff–Appellee,

Cleveland Concrete Construction, Inc. dba Cleveland Cement Contractors, Inc., Third Party–Appellee.

No. 00–3768.

United States Court of Appeals, Sixth Circuit.

Nov. 6, 2001.

Before SUHRHEINRICH and SILER, Circuit Judges; HOOD, District Judge.*

PER CURIAM.

Defendants Chelm Management Company ("Chelm"), Valley Park Development I, L.P. ("Valley Park") and Valley Park C & D Co. Ltd. appeal from the district court's order granting summary judgment in favor of plaintiff Wieland–Davco Corporation ("WDC") and third-party defendant Cleveland Cement Contractors, Inc. ("Cleveland Cement"). The court concluded that the defendants' material breach of the contract between the parties precluded recovery. We REVERSE and REMAND.

Background

In August 1995, WDC entered into a written contract (the "Contract") with Valley Park, which was managed by Chelm, to

* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

construct the Unisource Building in Independence, Ohio. WDC was to act as the general contractor and construction manager. It could employ subcontractors and suppliers and, where it did, it was responsible for their performance. WDC retained Cleveland Cement to construct a concrete floor for the building.

In 1996, WDC sued Chelm and Valley Park, alleging that the defendants had not paid all amounts due for the construction of two buildings, one of which was the Unisource Building. The defendants denied liability and counterclaimed, alleging that WDC had breached its warranty with respect to the Unisource Building's concrete floor and retaining wall. In response to defendants' counterclaim, WDC denied liability and joined Cleveland Cement as a third-party defendant. The defendants subsequently filed a cross-claim against Cleveland Cement, alleging that Cleveland Cement breached an independent promise to deliver a bond to them that guaranteed that the concrete floor would be free of defects for two years.

As an affirmative defense, and later as a new claim in its amended complaint, WDC asserted that defendants' damages, if any, resulted from defendants' material breach of the Contract. Specifically, WDC argued that paragraph 10.5.1 of the Contract required the defendants to purchase insurance to cover any costs of repairing and replacing WDC's or its subcontractors' defective work, and to name WDC and its subcontractors as additional insureds thereunder. Cleveland Cement asserted the same affirmative defense to defendants' cross-claim.

The district court granted WDC's and Cleveland Cement's ("plaintiffs") motion for summary judgment by concluding that the defendants' material breach of 10.5.1 precluded recovery. Subsequently, the parties settled or dismissed all claims among them, except for the defendants'

contention that, pursuant to the Contract, the plaintiffs breached their warranties with respect to the Unisource Building's concrete floor and retaining wall.

## Discussion

This court, "making all reasonable inferences in favor of the nonmoving party to determine if a genuine issue of material fact exists," *Tarrant Serv. Agency, Inc. v. American Standard, Inc.*, 12 F.3d 609, 617 (6th Cir.1993) (internal quotation marks and citation omitted), reviews *de novo* a district court's grant of summary judgment. *See Douglas v. Argo–Tech Corp.*, 113 F.3d 67, 70 (6th Cir.1997).

The district court concluded that the defendants' failure to purchase insurance to cover plaintiffs' alleged defective work constituted a material breach of the Contract that precluded the defendants from recovering any damages. Undertaking *de novo* review of the grant of summary judgment and applying Ohio law to interpret the Contract itself, we conclude that the court misinterpreted the Contract and, thus, erred by granting summary judgment in favor of WDC and Cleveland Cement.

Ohio law governs our interpretation of the Contract. Under Ohio law:

The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. . . . In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.

*Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities*

*Auth.,* 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (Ohio 1997) (internal quotation marks and citations omitted). Thus, to interpret a particular contract provision, a court must examine the Contract as a whole. The district court did not examine the contract as a whole and, as a result, reached a conclusion that does not give meaning and purpose to all of the Contract's provisions.

The key provision in the Contract is paragraph 10.5.1:

> 10.5.1 The Owner shall obtain and maintain property insurance in a form acceptable to the Contractor upon the entire Project for the full cost of replacement at the time of any loss. The insurance shall include as additional insureds the Contractor, Subcontractors and Subsubcontractors. This insurance shall insure against loss from the perils of fire and extended coverage, and shall include "all risk" insurance for physical loss or damage including without duplication of coverage, at least: theft, vandalism, malicious mischief, transit, collapse, falsework, temporary buildings, debris removal, flood, earthquake, testing, and damage resulting from defective design, workmanship or material. The Owner shall increase limits of coverage, if necessary, to reflect estimated replacement cost.

The court interpreted this paragraph to stand for the proposition that the defendants were required to maintain: a) insurance to cover "any loss," and b) "all risk" insurance to cover the plaintiffs' defective work. The interpretation fails when the text of 10.5.1 is analyzed both individually and in the context of the Contract as a whole.

The phrase "at the time of any loss" in 10.5.1 cannot mean that the defendants were required to insure against every conceivable happening. That phrase should be read in the context of the whole paragraph—"at the time of any loss" covered under 10.5.1. The paragraph defines "loss": "loss from the perils of fire and extended coverage, and ... 'all risk' insurance for physical loss or damage." Thus, "any loss" means any of the losses enumerated in 10.5.1 or otherwise covered under the "all risk" insurance policy obtained by the defendants. If "any loss" truly meant "any loss [in the whole world]," there would have been no need to set minimum insurance standards in 10.5.1. Additionally, it would be absurd to read 10.5.1 as requiring the defendants to insure against any conceivable property loss. It is unclear whether such insurance would even be available and, as will be discussed later, such a reading would render WDC's warranty liability, found throughout the Contract, meaningless and irrelevant.

Additionally, the court's assignment of meaning to the phrase "and damage resulting from defective design, workmanship or material" is incorrect. The key phrase that the court ignores is "damage resulting from." The insurance required to cover "defective design, workmanship or material" is different than the insurance required to cover fire or "all risk" events. For instance, "all risk" insurance covers "physical loss or damage." With regard to design defects and the like, 10.5.1 only requires the defendants to insure against "damage resulting from" the defects. Insurance covering "damage resulting from" defects does not extend coverage to the defective work itself. Thus, if a defective floor caused a support beam to crack, any damage to the beam would be "damage resulting from defective design" and, accordingly, the defendants would be required to maintain insurance to cover damage to the beam. The defendants would not be required, however, to maintain insurance to cover the cost of repairing the defective floor.

Further, even if the court construes 10.5.1 in such a way that "damage resulting from defective design, workmanship or material" is a component of "all-risk" insurance, the analysis does not change. Pursuant to the "all risk" insurance in 10.5.1, certain events are covered for "physical loss or damage." But "defective design, workmanship or material" is not one of those events. Only "damage resulting from defective design" is covered. This reading of "all risk" insurance is supported by the unrefuted affidavit of Clinton Many, a manager of the Risk Management & Claims Department of Acordia, in which he stated that "all risk" insurance, an industry term, equates to "Causes of Loss–Special Form" property insurance and excludes, at a minimum, coverage for property losses caused by defective design, workmanship or material.

Finally, the court ignored other provisions in the Contract that must be interpreted in conjunction with 10.5.1 so as to give effect to the Contract as a whole. The court failed to address the Contract provisions that create warranty liabilities for WDC. If 10.5.1 meant that the defendants were required to insure against defects in WDC's or its subcontractor's work, the warranty provisions would serve no purpose. To give the warranty provisions effect, the Contract must be interpreted to hold WDC liable for the deficient performance of it and its subcontractors.

Thus, whether 10.5.1 is interpreted in a vacuum or in the context of the Contract as a whole, it is clear that the defendants were not required to maintain insurance to cover the cost of WDC's or Cleveland Cement's performance defects, including an alleged defective concrete floor and retaining wall. Because they were not required to maintain such insurance, any breach by the defendants of the clause in 10.5.1 that required them to include WDC and Cleveland Cement as insureds, which they did not do, or of the clause in 10.5.5 that required them to notify WDC if 10.5.1 insurance was not maintained would not constitute a material breach. Additionally, the Contract's "Waiver of Subrogation" clause, does not preclude the defendants from collecting damages from WDC because that clause only precludes the litigation of claims that are covered by the insurance provided for in 10.5. The damages alleged by the defendants would not be covered by the 10.5 insurance. As defendants did not materially breach 10.5.1, recovery is possible and the case is remanded for further proceedings.

REVERSED AND REMANDED.