OPINION OF THE COURT
Carol R. Edmead, J.
In 1994, the tenant respondent Chung King House of Metal, *45 Inc. (Chung King) leased the entire twelfth floor of the building located at 170 Varick Street, New York, New York, from the landlord petitioner Rector, Churchwardens and Vestrymen of Trinity Church in the City of New York (Rector Church) from September 1, 1994 through August 31, 2004 (the lease). In 1995 and 1996, the lease was modified to include two portions of the eleventh floor of the subject building. According to the lease, Chung King agreed to pay 110% of the rates charged by Con Edison for demand and consumption of electricity, and if such rate “includes any adjustment for time-of-day for either demand or consumption * * * the rate applicable to [Chung King] shall be that specified for the peak period.” With respect to security guard charges, article Thirty-Ninth of the lease provided in pertinent part:
“If the Landlord has instituted, or shall institute a security guard program at the building under contract with a recognized security guard or patrol agency which shall supply guards for lobby, hall, loading bank and other patrol services at the building on a contract basis, the Tenant will * * * pay to the Landlord the Tenant’s proportionate share of 121% of the Landlord’s expenditures for the security guard services for the building. The amount payable hereunder shall constitute additional rent.”
The second article of the lease obligated Chung King to pay a late charge of l1/2% per month for any installments of rent or additional rent of any service charge not “paid within 5 days following the date” on which same is due.
Article Twenty-Fifth of the lease further provides:
“(a) If the Tenant shall default in the full and due performance of any covenant of this lease, the Landlord shall have the right, upon five (5) days’ notice to the Tenant * * * to perform the same for the account of the Tenant, and in such event all workmen employed by the Landlord shall be deemed the agents of the Tenant, and any reasonable payment made, and expense incurred, by the Landlord in this connection, shall forthwith become due and payable by the Tenant to the Landlord. If the Landlord is compelled to incur any expenses, including reasonable attorneys’ fees in instituting, prosecuting or defending any action or proceeding instituted by reason of any default of the Tenant hereunder, the sum or sums so paid by the Landlord *46 with all interest, costs and damages, shall be deemed immediately due to the Landlord upon demand!.] Any an[d] all sums payable by the Tenant to the Landlord shall bear interest * * * and any and all such sums (except the rent hereinabove expressly reserved) shall be deemed to be additional rent for the period prior to such due date, and the Landlord shall have the same remedies for default in the payment of such additional rent as for default in the payment of the rent expressly reserved.”
Summary Proceeding
On November 1, 2001, Rector Church served Chung King three separate three-day notices for rent and additional rent consisting of water, security guard, sprinkler, and late charges, or a combination thereof, for each of the leased premises. As a result of Chung King’s failure to timely cure, Rector Church commenced this nonpayment dispossess proceeding. In its first cause of action, Rector Church alleges a claim for rent and additional rent in the sum of $27,697.29 for rent arrears for September and October 2001, and water, late charges, sprinkler costs, and security guard costs. In its second cause of action, Rector Church seeks $21,946.81 for electricity charges for the months of August, September, and October 2001 for the aforementioned leased premises. Chung King joined issue by service of its answer, entering general denials and alleging numerous affirmative defenses.*
Summary Judgment
Rector Church moves for summary judgment, arguing that their submissions establish that there are no issues of fact that Rector Church charged Chung King according to the rates specified in the lease and that Chung King defaulted. Chung King opposes the motion and cross-moves for summary judg *47 ment dismissing the complaint, arguing that (1) the lease does not allow the landlord to charge it for on-peak usage during off-peak times; (2) the electricity charges were miscalculated; (3) there is insufficient evidence of meter readings; (4) the security guard charges are unwarranted since no security guard was posted; and (5) the rent demand was defective for failure to include electricity charges. In response to Rector Church’s reply, Chung King further argues that this court lacks subject matter jurisdiction to award electrical charges.
Analysis
With respect to the first cause of action for security guard charges, this court finds that the submissions by Rector Church adequately establish its entitlement to summary judgment as to such charges. However, although Rector Church is entitled to judgment on this issue, this court is unable to award a money judgment for the security guard charges at this juncture. Chung King opposes the security guard charges on the grounds that (1) there was no security guard posted at 170 Varick Street, and (2) Rector Church failed to provide the security guard contract in support of its motion. In further opposition, Chung King submitted an affidavit by its president, John King, wherein he states that the adjoining buildings at 160 Varick Street and 170 Varick Street (in which Chung King is located) share a lobby, but have separate entrances. However, in further support of its motion for summary judgment, Rector Church submitted its contract with U.S. Security Associates (U.S. Security) for security guard services, and an affidavit by assistant director of U.S. Security Joseph Redican. Redican’s affidavit establishes that (1) the buildings located at 160 Varick Street and 170 Varick Street have a “common lobby”; (2) said lobby is “protected by a guard stationed at a security desk in the 160 Varick Street building,” who views and patrols the lobby; (3) video cameras permit the guard to view areas of the lobby of 170 Varick Street that were otherwise out of view; and (4) during a period of construction in April and May 2002, where the lobby was separated by a plywood wall, visitors for the 170 Varick Street building had to enter exclusively through either the 170 Varick Street entrance or its freight entrance, and that said entrances were protected by a security guard when in use. Therefore, King’s mere statement that “People entering into my building through the 170 Varick Street lobby do not encounter a security guard of any type” is conclusory and insufficient to defeat Rector Church’s entitlement to judgment for security guard charges.
*48 However, the monetary award for such security charges cannot be determined. Article Thirty-Ninth of the lease states that Chung King is responsible for its pro rata share of the security guard services for the building. According to the lease, the building is “known by street number 170 Varick Street.” According to the affidavit of Sylvia Campbell (manager of real estate accounting for Rector Church), Chung King’s proportionate share of security guard charges was calculated by dividing the square footage of each of Chung King’s leased spaces by the total square footage of rentable space under lease in the 170 Varick Street building. Although this formula is uncontested, there is no basis in the lease or in fact for this formula. Furthermore, assuming arguendo that such formula is warranted, this court cannot grant a money judgment. By its own admission, as indicated by the aforementioned Redican affidavit and in the security guard contract submitted by Rector Church, the security guard services provided coverage for both 160 Varick Street and 170 Varick Street. As such, the calculation for security guard charges should include the square footage for both buildings. Although Campbell’s affidavit indicates that Chung King was billed “half of what it would normally be billed if the security guards were only protecting 170 Varick Street,” there is no basis in the record to support such reduction since the submissions do not indicate (1) the total square footage or total square footage of rental space of the 160 Varick Street building, or (2) that the total square footage or square footage of rental space of 160 Varick Street is in fact double of that of 170 Varick Street. Accordingly, a hearing on this issue of damages relating to security guard charges is required.
With respect to the remaining claims for rent, water, and sprinkler charges due and owing as of May 1, 2002 in the first cause of action, based upon the submissions before this court, Chung King is directed to pay the following to the extent not already paid as of the date of this order: (1) outstanding balance of rent $248.52 (constituting $17,991.21 due and owing, less $17,742.69 paid by Chung King); (2) sprinkler charges of $171; and (3) water charges of $35.
With respect to the second cause of action for electricity charges, this court lacks subject matter jurisdiction to award damages on this claim. The primary purpose of a summary nonpayment proceeding pursuant to RPAPL 711 is to provide a landlord with an inexpensive, expeditious, and simple means to obtain possession of the leased premises for nonpayment of rent (New York Univ. v Farkas, 121 Misc 2d 643 [1983]; *49 Gardens Nursery School v Columbia Univ. in City of N.Y., 94 Misc 2d 376 [1978]; Maxwell v Simons, 77 Misc 2d 184 [1973]). The purpose of the statutory three-day notice requirement, which is to permit the tenant to timely cure the default and avoid unnecessary litigation and possible eviction, underscores the possessory nature of a summary proceeding (Jendor Indus. v Harvest Year Seafood Rest., 187 Misc 2d 293 [2000]; Kulok v Riddim Co., 185 Misc 2d 195 [2000]). Under this notion, courts have held that claims arising from a residential lease which are unrelated to rent or additional rent cannot be maintained in a summary proceeding (see Matter of Binghamton Hous. Auth. v Douglas, 217 AD2d 897 [3d Dept 1995] [landlord may seek judgment for money owed for rent in summary proceeding, but “not other charges”]; Matter of Petrakakis v Crown Hotels, 3 AD2d 635 [3d Dept 1956]; Atkinson v Trehan, 70 Misc 2d 614 [1972] [failure to pay taxes cannot support summary proceeding where lease did not identify taxes to be rent]). Based upon the case law cited below, whether the instant claim for electrical charges arising from the commercial lease can be maintained in this summary proceeding depends upon both the character of the claim and the terms of the commercial lease (see generally, River View Assoc. v Sheraton Corp. of Am., 33 AD2d 187 [1st Dept 1969] [stating that “it is only the failure to pay rent which gives rise to summary proceedings to dispossess” under RPAPL 711; however action would lie if parties stipulate that taxes are additional rent], citing Matter of Petrakakis, supra).
In Marketplace v Smith (181 Misc 2d 440 [1999]) the landlord commenced a nonpayment summary proceeding to recover possession of the premises. The landlord sought a judgment consisting of unpaid rent as of the date of the petition and a sum for accelerated rent for the remaining period of the lease. In deciding that the court lacked subject matter jurisdiction to award a judgment for accelerated rent, the court first determined whether the accelerated rent fell within the “same class as unpaid rent” (at 441) for which the court acknowledged it had jurisdiction. The court held that the accelerated rent clause was a “creature” of contract (at 442), as opposed to a creature of the statute governing summary proceedings. Concluding that a determination of such contractual claim would undermine the legislative intent of summary proceedings, the court denied the landlord’s motion for summary judgment and granted judgment for the unpaid rent and eviction. The rationale of this case applies with equal force to the instant *50 matter, since the claimed electrical charges, discussed further below, are not rent or additional rent.
Although not directly on point, Pamela Equities Corp. v Frey Co. (120 Misc 2d 281 [1983]) provides insight as to the propriety of maintaining a claim to recover electricity charges in a summary proceeding. In Pamela, the landlord commenced a summary proceeding for electricity, operating expenses, and taxes. The commercial lease expressly included electricity, among other things, as “additional rent.” It was undisputed that the tenant paid and would continue to pay base rent. The court retained jurisdiction and acknowledged that discovery was not favored in summary proceedings. However, in deciding whether to grant discovery to the parties, the court characterized the action as contractual in nature and found that discovery was warranted under the circumstances.
Rector Church cites Brusco v Miller (167 Misc 2d 54 [App Term 1995]), for the proposition that an ancillary contract claim can be maintained in this summary proceeding. In Brusco, the tenant claimed that the three-day rent demand was facially insufficient since it included a claim for attorney’s fees. The court held that including a claim for such ancillary contractual damages in a three-day rent demand did not render said demand facially insufficient and that such contract claim can be a “proper subject of recovery in the summary proceeding, albeit they may only be the source of a money judgment” (at 56). Although the decision does not state whether the residential lease defined attorney’s fees as additional rent, the contractual damages were “provided for in the parties’ lease” (at 55). Notably, the case to which the court cites, Silber v Schwartzman (150 Misc 2d 1 [App Term 1991]), involved a situation where the legal fees sought in the residential summary proceeding were defined “additional rent” (Silber, supra at 2 [holding that the entry of a possessory judgment for attorney’s fees charges as additional rent was improper in the context of a rent-stabilized premises, but that the landlord was entitled to a money judgment for such attorney’s fees only]). Since the lease in this case did not define electrical charges as “additional rent,” Brusco does not support a finding of subject matter jurisdiction over the petitioner’s second cause of action for electrical charges.
According to article Twenty-Fifth of the lease, the expenses incurred as a result of Rector Church “instituting, prosecuting, or defending any action or proceeding instituted by reason of any default of the Tenant hereunder” is defined as “additional *51 rent.” Therefore, the electrical charges do not fall within “additional rent” under such paragraph. This court also notes that the tenth article of the lease concerning electricity charges does not define such charges as rent or additional rent. Additionally, the first cause of action in the complaint expressly seeks judgment or possession for nonpayment of “rent” and “additional rent,” and that the sum sought therein does not include the electrical charges. The second cause of action clearly seeks to recover judgment for only electrical charges. Furthermore, as counsel for Chung King points out, Rector Church avers that electricity is not defined as rent or additional rent in its reply papers. Therefore, since Rector Church has sought to recover a money judgment as to the electrical charges under a theory of breach of contract, the parties have not treated such charges as additional rent, and such ancillary claim cannot result in eviction, such claim is not properly before this court.
Accordingly, the branch of Rector Church’s motion for late charges and to conform the verified petition to include outstanding sums is denied, because this relief cannot be granted at this time based on the balance of this court’s ruling.
Ordered that the landlord petitioner’s motion for summary judgment as to its claims for security guard charges and late fees is granted on the sole issue of liability, the respondent’s cross motion to dismiss said claims is denied, and petitioner should schedule a hearing on damages in Part 52, and it is further ordered that landlord petitioner’s motion to conform the verified petition to include outstanding sums is denied, and it is further ordered that the landlord petitioner’s motion for summary judgment as to the second cause of action for electricity charges is denied, and the respondent’s cross motion to dismiss the second cause of action for lack of jurisdiction is granted, without prejudice for petitioner to commence a plenary proceeding on this cause of action.
[Portions of opinion omitted for purposes of publication.]

 On December 4, 2001, Chung King executed a stipulation adjourning a hearing on this matter to December 20, 2001 and waiving any defenses it may have had to jurisdiction. On January 30, 2002, this court directed Chung King to pay outstanding “base rent on all space” through February 2002. On March 13, 2002, this court directed Chung King to pay use and occupancy for March 2002 and continuing pursuant to the lease and to pay “outstanding water and sprinkler charges accrued thus far” and continuing pursuant to the lease. In response to Chung King’s allegation that Rector Church billed it for electricity at a different rate from which Con Edison bills Rector Church, this court directed the parties to depose a witness from Con Edison. Furthermore, this court also set forth a motion schedule regarding other charges owed to Rector Church. Thereafter, the parties deposed Con Edison’s senior customer service representative and its section manager of rate design.