2003 ND 198

**VND, LLC, a North Dakota Limited Liability Company, Plaintiff and Appellant,**

v.

**LEEVERS FOODS, INC. d/b/a Leevers County Market, a North Dakota Business Corporation, Defendant and Appellee.**

**No. 20030091.**

Supreme Court of North Dakota.

Dec. 19, 2003.

Rehearing Denied Jan. 14, 2004.

**446**

Mark G. Schneider, Schneider, Schneider & Phillips, Fargo, for plaintiff and appellant.

Daniel M. Traynor (argued) and Thomas E. Rutten (appeared), Traynor, Rutten & Traynor, P.C., Devils Lake, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] VND is appealing a Southeast Judicial District Court judgment denying summary eviction of Leevers Foods, Inc., under N.D.C.C. ch. 33–06. After a hearing on the motion for eviction, the district court found there had been no material breach of the written lease by Leevers, as required by N.D.C.C. § 33–06–01(8), found Leevers was entitled to equitable relief from the termination of the lease because of its substantial investment in the leased premises, and denied summary eviction. VND argues the district court erred in allowing Leevers to present counterclaims

and affirmative defenses to its summary eviction claim. VND also argues that Leevers admitted it breached the lease and that these breaches were sufficient for summary eviction in that they were material. Finally, VND argues that Leevers' substantial investment in the leased property does not entitle it to equitable relief from the termination of the lease. Because this case is not suitable for summary eviction, we affirm.

## I

[¶ 2] Leevers is a North Dakota corporation that operates a supermarket in Jamestown known as Leevers County Market. VND is a limited liability company and owns a shopping mall in Jamestown known as Park Plaza Mall. Leevers entered into a lease on November 27, 1981, with the former owner of the Park Plaza Mall, Paul J. Bjornson. On October 21, 1997, VND purchased the Park Plaza Mall and assumed the lease.

[¶ 3] The lease provides for monthly rental payments of $10,417.00. Leevers leases approximately 57.22 percent of the space available for tenants in Park Plaza Mall and pays 57.22 percent of the common area maintenance charges for the Park Plaza Mall in addition to its monthly rent. Leevers claims it has paid approximately one million dollars in monthly rent and maintenance charges since October 21, 1997. Leevers also contends it made long-term capital investments estimated at 3.9 million dollars. These investments include fixtures and other leasehold improvements of 1.8 million dollars, including $142,000 paid for improvements to the Park Plaza Mall parking lot. VND claims that maintenance charges of over $20,000 are unpaid, owing, and continuing to accrue.

[¶ 4] Leevers claims it has not paid its maintenance charges because of past overcharges. Leevers investigated and found it was likely that the common area meters supplied utilities for other tenants in the Park Plaza Mall. On January 16, 2001, Leevers notified VND of this problem and gave VND an opportunity to cure. On January 29, 2001, VND asked Leevers to give proof of its allegations. On March 25, 2002, Leevers provided proof of $20,597.00 in overpaid utilities and stated it would deduct overpayments from future bills for the maintenance charges. On March 29, 2002, Leevers claims VND gave it an accounting, providing credit to Leevers for the overpayment of maintenance utilities from October of 1997 forward; Leevers claims VND acknowledged a $17,580.19 credit. VND denies acknowledging a credit. VND informed Leevers that any deductions of maintenance overpayments by Leevers would be treated as a separate default of the lease. Leevers began applying the alleged credit to its monthly maintenance statements. Leevers did not send a notice of default to VND with regard to the maintenance charges.

[¶ 5] Leevers claims it has paid for a pro-rata share of all-risks insurance on the building in addition to maintaining its own liability insurance under the lease. Leevers notified VND that it was no longer going to pay for 57.22 percent of VND's cost of purchasing liability insurance, claiming the language of the lease did not require this payment. Prior to the hearing, Leevers agreed to resume paying for this insurance and to reimburse VND for the pro-rata cost for those months when the insurance was not paid.

[¶ 6] On August 9, 2002, VND gave Leevers written notice of default, alleging Leevers was in default for failing to pay common area maintenance charges, for unilateral setoff of rents due, and for failing to pay its pro-rata share of liability insurance. On September 5, 2002, Leevers responded to the notice of default,

stating it was applying an acknowledged credit due in maintenance charges and denying it owed a pro-rata share of VND's liability insurance under the lease. On September 10, 2002, notice of intention to evict was served upon Leevers; no demand for damages or for rents and profits was made with the notice. Leevers did not vacate the premises. VND brought a suit against Leevers for summary eviction. A hearing on the motion for eviction was held on October 24, 2002.

[¶ 7] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

II

[¶ 8] VND argues Leevers was precluded from asserting any counterclaims or affirmative defenses in this summary eviction action because it demonstrated Leevers failed to pay rent and otherwise materially breached the lease.

[¶ 9] " 'The interpretation of a statute is fully reviewable on appeal.' " *State v. Norman,* 2003 ND 66, ¶ 14, 660 N.W.2d 549 (quoting *Overboe v. Farm Credit Servs.,* 2001 ND 58, ¶ 9, 623 N.W.2d 372 (citation omitted)). " 'Although courts may resort to extrinsic aids to interpret a statute if it is ambiguous, we look first to the statutory language, and if the language is clear and unambiguous, the legislative intent is presumed clear from the face of the statute.' " *Id.*

[¶ 10] Section 33–06–04, N.D.C.C., provides:

An action of eviction cannot be brought in a district court in connection with any other action, except for rents and profits accrued or for damages arising by rea-

son of the defendant's possession. No counterclaim can be interposed in such action, except as a setoff to a demand made for damages or for rents and profits.

[¶ 11] "The purpose of the no-counterclaim provision in the eviction statutes 'was to get a speedy determination of possession without bringing in any extraneous matters.' " *Anderson v. Heinze,* 2002 ND 60, ¶ 11, 643 N.W.2d 24 (quoting *Nomland Motor Co. v. Alger,* 77 N.D. 29, 31, 39 N.W.2d 899, 900 (1949)). *See also South Forks Shopping Center v. Dastmalchi,* 446 N.W.2d 440, 443 (N.D.1989).

[¶ 12] "In an eviction action, the defendant may show the character of the possessory rights claimed by the parties." *Anderson,* 2002 ND 60, ¶ 11, 643 N.W.2d 24 (citation omitted). However, " 'the right to the possession of the real estate is the only fact that can be rightfully litigated unless damages or rent is claimed.' " *Id.* (quoting *Vidger v. Nolin,* 10 N.D. 353, 354, 87 N.W. 593, 593 Syllabus ¶ 3 (1901)).

[¶ 13] The right to possession in this case depends on whether or not Leevers failed to pay rent and whether or not there were any material breaches. The evidence regarding the strained relationship is important in determining whether a material breach has occurred. *See generally Restatement (Second) of Contracts* § 241 (1977). Further, because whether rent is paid goes to Leevers' right of possession, affirmative defenses and counterclaims regarding the payment of rents must be allowed. We conclude the district court did not misapply the law in this case by allowing evidence of the strained relations between Leevers and VND and by allowing Leevers to present evidence on whether rent was paid.

### III

[¶ 14] VND argues the trial court erred in failing to summarily evict, because Leevers admitted it failed to pay $20,000 in past due "additional rents" and over $10,000 in past due pro-rata portions of the landlord's liability insurance.

### A

[¶ 15] Whether failure to pay $20,000 in past due "additional rents" is sufficient to compel summary eviction depends on whether the "additional rents" are considered rents for the purposes of N.D.C.C. § 33–06–01(4).

[¶ 16] Section 33–06–01, N.D.C.C., provides the grounds for maintaining a summary eviction action. Section 33–06–01(4) provides that an action of eviction to recover the possession of real estate is maintainable in the proper district court when a lessee fails to pay rent for three days after the rent becomes due.

[¶ 17] Section three, additional rent, of the lease agreement provides:

> Lessee agrees to pay its pro-rata share of mall maintenance and cleaning, mall lighting, mall landscaping, mall heat and air conditioning, and parking lot repair and maintenance. Such pro-rata share shall be made on the basis of the square feet of the floor area of the building which is a part of the demised premises as related to the total [leaseable] square footage of the floor area in the Shopping Center.

[¶ 18] Whether "additional rents" are considered rents for summary eviction purposes is discussed in *Rector, Church Wardens, Vestrymen v. Chung King House of Metal, Inc.,* 193 Misc.2d 44, 747 N.Y.S.2d 292 (N.Y.CityCiv.Ct.2002). This case deals with a summary nonpayment proceeding under New York Consolidated Law Service, Real Property Actions and Proceedings Law § 711, summary proceedings to recover possession of real property. The purpose of the New York statute is similar to the purpose of the North Dakota statute dealing with summary eviction. N.D.C.C. § 33–06–01. The purpose of each statute is to provide a landlord with an inexpensive, expeditious, and simple means to obtain possession of leased premises for nonpayment of rent. *See Rector,* 747 N.Y.S.2d at 295; *see also Anderson,* 2002 ND 60, ¶ 11, 643 N.W.2d 24 (The purpose of the no-counterclaim provision in the eviction statutes is to get a speedy determination of possession.). We have held that claims arising from a lease unrelated to possession cannot be maintained in a summary proceeding. *Anderson,* at ¶ 11. Similarly, the New York court has held that "claims arising from a residential lease which are unrelated to rent or additional rent cannot be maintained in a summary proceeding." *Rector,* 747 N.Y.S.2d at 295–96 (citing *Binghamton Hous. Auth. v. Douglas,* 217 A.D.2d 897, 630 N.Y.S.2d 144 (3rd Dept. 1995) (landlord may seek judgment for money owed for rent but not other charges) (citations omitted)).

[¶ 19] According to New York law, whether a claim for electrical charges arising from a commercial lease can be maintained in a summary proceeding depends upon "both the character of the claim and the terms of the commercial lease." *Id.* at 296 (citations omitted). A summary proceeding action can be brought when the lessor and lessee stipulate that something is an additional rent and these additional rents are not paid. *See River View Assoc. v. Sheraton Corp. of America,* 33 A.D.2d 187, 306 N.Y.S.2d 153, 156 (N.Y.A.D.1969); *see also Petrakakis v. Crown Hotels, Inc.,* 3 A.D.2d 635, 158 N.Y.S.2d 15, 16 (N.Y.A.D.1956) (taxes not treated as rent for purposes of maintaining summary pro-

ceeding action because unpaid taxes were not expressly made part of the rent).

[¶ 20] In *Rector*, electrical charges were not additional rent because they did not fall under the definition of "additional rent" in the lease. *Rector*, 747 N.Y.S.2d at 297. The case before us is distinguishable from *Rector* because the maintenance charges at issue fall directly under the heading "additional rents." This case is more analogous to *River View Assoc.* in which the court concluded utility and insurance charges were not additional rent because the lease did not so provide, but found taxes, licenses, and water to be additional rent because they were described as such in the lease. 33 A.D.2d 187, 306 N.Y.S.2d 153, 155–56 (N.Y.A.D.1969).

[¶ 21] *Morningside Studios v. Lucille Hotel Corp.*, 70 Misc.2d 760, 334 N.Y.S.2d 735 (N.Y.City Civ.Ct.1972) explains in detail why failure to pay additional rent under a commercial lease may be the basis for an order and warrant of eviction:

> As a matter of business practice and policy, commercial leases designate certain tenant's obligations as "additional rent" to enable the landlord to enforce them effectively and to proceed summarily against a tenant who defaults in this obligation.... In my opinion, these obligations [real estate taxes, sewer and water charges, assessments, vault and rental taxes] are sufficiently material to the lease to warrant their enforcement by a warrant of eviction. Failing to do so would result in the tenant not performing its material obligations as diligently as agreed and would place the landlord in a difficult position.

70 Misc.2d 760, 334 N.Y.S.2d 735, 737 (N.Y.Civ.Ct.1972).

[¶ 22] The court explained:

The expression "additional rent" is deliberately used as words of art, and is well-known in the real estate industry as being as enforceable as the monthly rental. Therefore, the failure to pay "additional rent" under a commercial lease may be the basis for an order and warrant of eviction and not only for a money judgment.

*Id.*

[¶ 23] The Restatement (Second) of Property has also explained that payments for the use of the premises, such as taxes or other sums, may be treated as rent by an agreement in the lease, so that a default will give rise to all the remedies for a failure to pay rent. Restatement (Second) of Property § 12.1 cmt. a, illus. 1 (1977). The Restatement bases this assertion on *Allbaugh v. United States*, 184 F.2d 109 (8th Cir.1950). *Id.* at reporter's notes p. 421. *Allbaugh* states:

> By long-settled principles of landlord and tenant law, where a lessee has agreed to pay taxes as rental and does not make payment of them to the proper public authority when they are due, the amount thereof becomes a debt owing to the lessor and is collectible as such, like any other delinquent rent.

*Allbaugh*, 184 F.2d at 112.

■ [¶ 24] We conclude the common area maintenance charges, as "additional rents," and defined as such in the lease, are rents for the purposes of summary eviction under N.D.C.C. ch. 33–06.

■ [¶ 25] Because these additional rents were unpaid, VND claims it is entitled to automatic eviction. VND relies on *South Forks* for this proposition. *South Forks Shopping Ctr. v. Dastmalchi*, 446 N.W.2d 440, 444 (N.D.1989). In *South Forks*, the tenant argued no rent was owed because the landlord was in breach of another part of the lease. *Id.* at 442. In *South Forks* this Court concluded it was "unaware of any authority in this state for

permitting a commercial tenant to both remain in possession and refuse to pay rent when a landlord breaches a covenant of the lease, unless the terms of the lease so provide." *Id.* at 444. In *South Forks,* the landlord breached an agreement to lease different space to the tenant; this Court concluded this agreement was independent of the rent due for the lease of present space. *Id.* This Court held the two promises were not concurrent and conditional and therefore concluded that because rent was unpaid, South Forks was entitled to eviction. *Id.* at 444–45. The situation between Leevers and VND is distinguishable because there are not two independent promises; in this case rent has been overpaid, and a credit is due. We conclude failure to pay rent when a credit is due cannot justify a summary eviction and cannot be said to be a breach of the lease.

[¶ 26] The district court did not specifically conclude whether the additional rents were rents for the purposes of summary eviction. The district court did, however, conclude *South Forks* was distinguishable from the present case. The district court found the parties had several disputes related to common area maintenance charges and Leevers had been correct on most of the issues raised. The district court found VND repeatedly overbilled Leevers for items not allowed by the terms of the lease.

[¶ 27] Although the district court's findings of fact and conclusions of law should be stated to afford us a clear understanding of the court's decision, the findings are adequate if we can understand from them the factual basis for the district court's determination. *Gross v. Sta–Rite Industries, Inc.,* 322 N.W.2d 679, 682 (N.D.1982). "[A]lthough findings of fact could be more definite, [lack of specificity] alone does not make them erroneous." *Id.*

We conclude the district court did not err in denying an action for summary eviction on the basis of Leevers' failure to pay rent. Further, its findings adequately inform us of the basis for the decision.

B

[¶ 28] VND argues the district court erred in failing to summarily evict for material breach of the lease, because Leevers owed past due pro-rata insurance premiums under the lease. VND argues Leevers admitted to owing the premiums and the district court mischaracterized its admission as a settlement. VND argues that even if Leevers does not owe premiums under the lease, it owes the premiums on the basis of custom and usage, waiver, and laches.

[¶ 29] The district court in its Memorandum Opinion stated:

A question of the liability insurance and a prorating of that liability insurance and the cost of the liability insurance has been a recent issue. After meeting with counsel the Court suggested that the defendant, because of its prior payment of the percentage of the premises liability insurance continue to maintain that relationship by paying the liability insurance. In open court the defendant agreed to make the liability insurance payment. Once the liability matter had been settled . . . .

The finding on this matter stated:

10. The Defendant gave notice to the Plaintiff that they were no longer going to pay for 57.22 percent of the Plaintiff's cost of purchasing liability insurance because the language of the lease did not require this payment. The Defendant agreed prior to the hearing to resume paying for this insurance and to reimburse the Plaintiff for the pro-rata cost

for those months when such insurance was not paid.

The district court also found no material breach of the lease agreement.

[¶ 30] Section 33–06–01(8), N.D.C.C., provides that an action of eviction to recover the possession of real estate is maintainable in the proper district court when the "lessee violates a material term of the written lease between the lessor and lessee."

[¶ 31] "[W]hether there has been substantial performance of a contract is a question of fact. The question of whether a lease has been fully complied with should also be treated as a finding of fact because the rules of construction relating to contracts generally apply to the construction of leases." *Kolling v. Goodyear Tire and Rubber Co.*, 272 N.W.2d 54, 60 (N.D.1978).

[¶ 32] "Whether a contract should be canceled for breach depends upon the facts of each case." *Sandberg v. Smith*, 234 N.W.2d 917, 919 (N.D.1975); *see also Hutton v. Janz*, 387 N.W.2d 494, 498 (N.D.1986). "A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made." *Schmidt v. Schmidt*, 2003 ND 55, ¶ 14, 660 N.W.2d 196.

[¶ 33] Leevers argues it engaged in a reasonable interpretation of the lease regarding the payment of liability insurance. It maintains the lease agreement does not require payment of a pro-rata share of VND's premises liability insurance. Leevers claims it has complied with the lease by paying its pro-rata share of "All Risk" insurance on the building in addition to maintaining its own liability insurance.

[¶ 34] Leases are subject to the rules of contract construction. *Prairie-view Nursing Home v. North Dakota Dept. of Human Services*, 1999 ND 142, ¶ 10, 598 N.W.2d 116. If the intent of the parties can be determined from the language of the contract alone, the interpretation of the contract is a question of law. *Spagnolia v. Monasky*, 2003 ND 65, ¶ 10, 660 N.W.2d 223. "If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language." *Prairieview Nursing Home*, at ¶ 10. "[T]his court has consistently held a lease will ordinarily be construed most strongly against the lessor." *Ehrman v. Feist*, 1997 ND 180, ¶ 10, 568 N.W.2d 747 (citations omitted).

[¶ 35] The written lease in this case states:

Lessor is to provide and secure, at Lessor's expense, building insurance on an "All Risk" form in an amount equal to the replacement value of the building on the demised premises; such insurance shall protect against any loss, damage and/or destruction to the building or any other insurable portion of the demised premises. Certificates evidencing such insurance shall be delivered to Lessee.

Lessee shall reimburse Lessor by payment of its pro-rata share of the premium upon receipt by Lessee of invoice accompanied by insurance bills. Such pro-rata share to be determined as in paragraph Eight.

Lessee agrees to provide at its expense public liability insurance in an amount equal to at least $1,000,000 (combined single limit).

[¶ 36] When a lessee was required to insure equipment under an "All Risk" form, this Court concluded that the language of the lease, by its own terms, required insurance for damage to the equipment. This Court concluded the provision

of the lease was not applicable to damages for personal injury. The lease provided:

> INSURANCE: Lessee agrees at its expense to keep said equipment insured under a contractor's ALL RISK form with not more than $250 deductible clause, containing a loss payable clause in favor of Lessor. Satisfactory evidence of this as well as public and property damage liability coverage with minimum limits of 250/500/250 will be furnished Lessor.

*Barsness v. General Diesel & Equipment Co., Inc.*, 422 N.W.2d 819, 825 (N.D.1988) (indemnity case).

[¶ 37] The lease requires Leevers to reimburse VND for insurance of an "All Risk" form for damages or destruction to the building. The lease, by its own terms, requires reimbursement only for damages to the building and other insurable portions of the premises and is not applicable to damages for personal injury ("such insurance shall protect against any loss, damage and/or destruction to the building or any other insurable portion of the demised premises"). Furthermore, Leevers was already providing $1,000,000 in public liability insurance at its own expense.

[¶ 38] In interpreting another contract provision dealing with all-risk insurance, the Sixth Circuit Court held the term "any loss" could not mean the defendants were required to insure against every conceivable happening. The court held that the term should be read in the context of the whole paragraph. The court determined the term "any loss" meant all losses discussed in the contract provision or otherwise covered under the "all risk" policy the defendants obtained. The provision stated:

> 10.5.1 The Owner shall obtain and maintain property insurance in a form acceptable to the Contractor upon the entire Project for the full cost of replacement at the time of any loss. The insurance shall include as additional insureds the Contractor, Subcontractors and Subsubcontractors. This insurance shall insure against loss from the perils of fire and extended coverage, and shall include "all risk" insurance for physical loss or damage including without duplication of coverage, at least: theft, vandalism, malicious mischief, transit, collapse, false work, temporary buildings, debris removal, flood, earthquake, testing, and damage resulting from defective design, workmanship or material. The Owner shall increase limits of coverage, if necessary, to reflect estimated replacement cost.

*Chelm Mgmt. Co. v. Wieland–Davco Corp.*, No. 00–3768, 23 Fed.Appx. 430, 432 (6th Cir.2001).

[¶ 39] In the *Chelm Mgmt.* case the defendant was required to purchase rather than reimburse for insurance; however, the court was interpreting the type of loss for which the defendant was liable to purchase insurance. Similarly, the lease agreement between Leevers and VND should be read as requiring Leevers to reimburse for all-risk insurance to protect against "any loss" to the building or other insurable portions of the premises. The provision should not be construed as requiring reimbursement for any loss whatsoever.

[¶ 40] In *Garofalo v. Saint Joseph's Hosp.*, 2000 ND 149, 615 N.W.2d 160 we stated:

> The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. N.D.C.C. § 9–07–02. A contract is interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. N.D.C.C. § 9–07–03. "The whole of a contract is to be taken together so as to

give effect to every part if reasonably practicable. Each clause is to help interpret the others." N.D.C.C. § 9–07–06. A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. N.D.C.C. § 9–07–12. 2000 ND 149, ¶ 8, 615 N.W.2d 160.

[¶ 41] Given the aforementioned cases and the rules of contract construction, we conclude the language of the contract should govern. The language of the contract is clear and explicit and does not involve an absurdity. The lease provision in question specifically includes the purpose of the insurance ("such insurance shall protect against any loss, damage and/or destruction to the building or any other insurable portion of the demised premises"). Interpreting the contract to include liability for things not specifically indicated in the paragraph would lead to an absurdity.

[¶ 42] VND argues Leevers is nonetheless required to pay a pro-rata share of VND's liability insurance on the basis of custom and usage, waiver, and laches.

[C]ustom and usage may be given effect as part of a written contract where the agreement is silent or ambiguous on a point, and where there is a well-established custom concerning a subject so that the parties may be presumed to have acted with reference to the custom. *Tong v. Borstad*, 231 N.W.2d 795 (N.D. 1975). The custom or usage must be proved as any other fact. *Peterson v. McCarney*, 254 N.W.2d 438 (N.D.1977). Whether or not a custom or usage exists is a question of fact.

*Hager v. Devils Lake Pub. Sch. Dist.*, 301 N.W.2d 630, 634 (N.D.1981).

[¶ 43] Because the language of the lease is not ambiguous, VND's argument regarding custom and usage need not be considered.

[¶ 44] In *Pfeifle v. Tanabe*, 2000 ND 219, 620 N.W.2d 167, this Court held:

A waiver occurs when a person voluntarily and intentionally relinquishes a known right or privilege. *Hanson v. Cincinnati Life Ins. Co.*, 1997 ND 230, ¶ 13, 571 N.W.2d 363. Waiver may be established either by an express agreement or by inference from acts or conduct. *Id.* The existence of waiver generally is a question of fact, but if circumstances of an alleged waiver are admitted or clearly established and reasonable persons can draw only one conclusion from those circumstances, the existence of waiver is a question of law. *Id.* Waiver may be found from an unexplained delay in enforcing contractual rights or accepting performance different than called for by the contract. *Dangerfield v. Markel*, 252 N.W.2d 184, 191 (N.D. 1977).

2000 ND 219, ¶ 18, 620 N.W.2d 167.

[¶ 45] "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay." *Williams County Social Services Bd. v. Falcon*, 367 N.W.2d 170, 174 (N.D.1985). In *Diocese of Bismarck Trust v. Ramada, Inc.*, this Court held:

Laches does not arise from the passage of time alone, but is a delay in enforcing one's right which is prejudicial to another. *Schmidt v. Schmidt*, 540 N.W.2d 605, 608 (N.D.1995); *Wehner v. Schroeder*, 354 N.W.2d 674, 676 (N.D. 1984). In addition to the passage of time, parties against whom a claim of laches is sought to be invoked must be actually or presumptively aware of their

rights and must fail to assert those rights against parties who in good faith changed their position and cannot be restored to their former state. *Wehner,* 354 N.W.2d at 676.

553 N.W.2d 760, 767 (N.D.1996).

■■■■ [¶ 46] Because Leevers is not asserting a right or trying to bring a claim, we conclude that laches and waiver do not apply.

[¶ 47] As a matter of law, we conclude Leevers was not obligated to pay a prorata share of liability insurance. Leevers, however, stipulated it would nonetheless pay the liability insurance, having paid it in the past.

[¶ 48] At trial, following off-the-record discussions between the court and counsel in chambers and before the first witness was called, Leevers stipulated it was obligated to pay the past due insurance premiums and all future premiums:

MR. RUTTEN: We won't stipulate that it is a material breach but will stipulate that—that the defendant would be obligated to pay that amount, whatever it is.

MR. SCHNEIDER: General liability premises portion of the insurance.

MR. RUTTEN: Right.

THE COURT: Whatever has been in existence from time [im]memorial; right?

MR. RUTTEN: That's correct.

THE COURT: ... [I]t is still an open issue if you want it. But if you are willing to accept the stipulation—

MR. SCHNEIDER: We are willing to accept the stipulation that they agree that they have a legal duty, and they did, and would now be willing to pay all general premises portion of their prorata share. We reserve the right of arguing that it is a material breach and, of course, Mr. Rutten is going to argue that it is not a material breach.

THE COURT: Okay. I will accept that stipulation. Anything else?

[¶ 49] During the course of the trial, there was further testimony regarding the stipulation:

Q: [By Mr. Schneider] Now we have stipulated in court now that—that you did have a duty to pay the general premises liability portion of the insurance at all times including all times during the tenancy my client assumed since 1997?

A: That's correct....

Q: [By Mr. Rutten] And so you are willing to pay that insurance from the time you quit paying it right up to the present and continue to pay it then?

A: That's correct. Even if the language of the lease says we don't have to we have agreed to that.

Q: [By Mr. Rutten] Okay. And that the other reason is because you had paid it all this time in the past?

A: Right. We—yes, that's correct.

[¶ 50] This was again discussed later on in the trial:

Q: [By Mr. Rutten] Now you now agreed in open court to stipulate that despite—in the insurance issue—despite the fact that you now believe that the lease didn't allow you to do that or didn't require you to pay general premises liability that you nonetheless had the legal responsibility to pay that; correct?

A: We so stipulated....

Q: [By Mr. Rutten] Just one matter of clarification with respect to the stipulation relating to insurance. Is it your understanding that we stipulated to pay the insurance because it had been paid over the years based on custom and usage but you are not stipulating—that that paragraph, Section 10 of the lease, requires you to pay a pro-rata share of

the landlord's liability insurance? You are not stipulating to that; are you? A: No.

 [¶ 51] VND argues this stipulation was an admission by Leevers to having breached its duty to pay its pro-rata share of insurance and the only issue left to determine was whether the failure to pay this obligation under the lease violated a material term of the written lease agreement. Leevers, on the other hand, argues this stipulation was a compromise to settle the issue. It maintains that it was not obligated to pay the insurance under the lease. In its memorandum opinion, the district court, which had participated in the off-the-record discussions, also construed the stipulation as a settlement of the issue. Leevers made it very clear it was not conceding it had committed a breach. The stipulation was only to pay the insurance and not an agreement that failure to pay was a material breach.

[¶ 52] We conclude the district court did not err in failing to construe this stipulation as an admission. We further conclude the district court did not err in concluding there was no material breach of the lease agreement.

### IV

[¶ 53] VND argues that Leevers has misstated the facts, that these facts are not supported in the record, and that double costs should be imposed. VND also argues Leevers raises the issues of waiver and estoppel for the first time on appeal. We conclude these arguments would have been brought more properly in a motion; nevertheless, we find them without merit.

[¶ 54] Because there has been no breach of the lease and because as a matter of law Leevers was not obligated to pay a pro-rata share of VND's liability insurance under the terms of the written lease prior to its stipulation, we do not need to discuss whether the court erred in determining that any breaches were immaterial, nor do we need to decide whether Leevers' substantial hardship can be considered. Because all rent has been paid and because Leevers has not committed any breaches of the lease, we conclude this case is not appropriate for summary eviction and therefore affirm the judgment of the district court.

[¶ 55] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.